# GENERAL COURT, OCTOBER TERM, 1801.

### CARROLL et al. vs. E. & S. NORWOOD.

EJECTMENT for a tract of land called *Yates his Forbearance,* lying in Baltimore county. The declaration contained seven separate demises, viz. from *Charles Carroll,* of *Carrollton,* for one fifth, *Nicholas Carroll,* one fifth, *Daniel Carroll,* of *Duddington,* one fifth, *Robert Carter,* one fifth, *Abraham Van Bibber,* one tenth, *Isaac Van Bibber,* one fiftieth, and *William Smith* four fiftieths. The defendants took defence on a warrant for all the lands within the lines of *The United Friendship,* as located in two ways by the surveyor, as the pretensions of the defendants, on the plots returned in the cause. The cause came on for trial at May term 1801.

### The Plaintiff's Title.

(A) *Patent* granted to *George Yate* on the 20th of July 1684, for a tract of land called *Yates his Forbearance,* containing 770 acres, more or less.

(B) *Will* of *George Yate,* dated the 6th of June 1691, by which he devised the said land to his two sons, *George* and *John,* in fee, as tenants in common.

Oct. 1801
Carroll
vs
Norwood.

The time when a deed was recorded, is a matter of fact for the jury to decide

If possession of the land mentioned in a deed has been held according to the deed, the jury may presume it was recorded within the time limited by law.

A deed express- _____ a moiety of a tract of land, describing the moiety by _____ and to contain a particular number of acres, is only competent, so much of the land as is included within the lines express-___ in the deed, even though the quantity be less than half of the tract included in the patent

Evidence may be given of possession under a defective deed which is located on the plots, although particular places of possession are not located.

An ancient deed not recorded in the records of the proper county, is evidence without proof of the execution, if possession of the land has been held under the deed; and livery and seisin of the land may be presumed if possession has gone and been held according to the deed.

Certain ancient bonds of conveyance, &c. the handwriting of the witnesses being proved, admitted as legal evidence.

Where the surveyor in locating a deed on the plots in the cause, had recited it by a wrong date—Held, that the deed was located on the plots, and permitted to be read in evidence in support of the location.

Evidence cannot be received to prove where a certain tree stood, unless the tree, or the place where it stood, is located on the plots.

A copy of a deed not necessary to be recorded, is not evidence.

A misrecital of a deed as to its date is not material.

A copy of a deed not enrolled in time, is no evidence of the proof of the original deed.

A judge has no authority to take the acknowledgment of a deed to be recorded for safe keeping.

If A, at the time of the execution of a defective conveyance to him from B, of a tract of land, had possession of the land under an assignment of B's bond of conveyance to C, then the deed will operate to convey, as a release, the fee to A, and an after conveyance from B to D, cannot operate to convey the same land.

—But such defective deed cannot operate as a deed of bargain and sale, so as to affect the title of D, and those claiming under him, which was acquired under the deed from B, unless D had notice of the deed from B to A, before the deed to him from B.

If two defendants in a joint action of ejectment appear and take defence, neither of them will be permitted to sever his defence at the trial court.

If the defendant does not locate his adversary possession on the plots, he will not be permitted to give evidence of such possession at the trial.

The record of an ancient deed, not signed or sealed by the grantor, but acknowledged by him, and the time when enrolled not mentioned, was permitted to be read in evidence.

If A has been in possession of land described in a deed to him from B, from the date of the deed to within seven years last passed, then a copy of an ancient deed, not enrolled in time from C to B, for the same land, and misrecited in the deed from B to A, with the rent roll entries, &c are evidence sufficient to induce the jury to presume and find a deed from C to B, for the land described in the deed from B to A.

A copy of a deed not enrolled in time, made by the clerk of a court under seal of office, is entitled to no more weight or credit, than a copy taken by a private person.

Judgment was entered on a verdict in ejectment, for the plaintiff, for the land described to begin at a point not located on the plots, but to be found by running a certain line, &c being for land not described by any particular location on the plots in the cause, but included within the plaintiff's location.

Oct, 1801

Carroll
vs.
Norwood

(C) *Deed* from *George Yate.* (the son.) to *John Israel,* dated the 5th of July 1712, for his one moiety or half part of the said land as above devised, which moiety is described by courses and distances, and stated as containing 382 acres. The time when the deed was recorded is not mentioned.

(D) *Deed* from *John Yate* to *Joshua Sewell,* dated the 1st of July 1710, for 100 acres, part of the said tract, described by courses and distances.

(E) *Deed* from *John Yate* to *Robert Chapman,* dated the 5th of March 1715, for 100 acres more or less, of the said tract, described by courses and distances. The time when the deed was recorded is not mentioned.

(F) *Deed* from *John Yate* to *John Israel,* dated the 29th of November 1715.

(G) *Will* of *John Israel,* dated the 13th of January 1723, whereby he devised 385 acres of the said tract, purchased of *George Yate,* and 182 acres thereof purchased of *John Yate,* being the remainder of *Yate's Forbearance,* to his sons *John Lacon Israel, Gilbert Talbot Israel* and *Robert Israel,* in fee, as tenants in common.

(H) *Deed* from *John Lacon Israel* to *George Buchanan,* dated the 7th of July 1731, for 151 acres, the eastermost part of the said tract of land.

(I) *Deed* from *George Buchanan* to Doctor *Charles Carroll,* dated the 11th of April 1732, for the said 151 acres of land.

(J) *Bond* from *John Lacon Israel* to *John Hurd,* dated the 24th of December 1730, covenanting to convey to the said *Hurd* 100 acres of land out of the said tract.

(K) *Assignment* of the said bond from *John Hurd* to *Benjamin Tasker* and Company, dated the 25th of February 1745.

(L) *Bond* from *John Hurd* to *Benjamin Tasker* and Company, dated the 26th of March 1747, reciting the above bond and assignment, and covenanting to deliver up to the said *Tasker* & Co. possession of the said 100 acres of land on the 10th of December 1749.

(M) *Deed* from *John Lacon Israel* to *Benjamin Tasker* and Company, dated the 15th of June 1750, for the said 100 acres of land, which the said *Israel* had covenanted to convey to *John Hurd* by bond, which had been assigned by the said *Hurd* to the said *Tasker & Co.* This deed was recorded in the records of *Anne-Arundel* county, on the 15th of June 1750, and afterwards by decree of the chancellor recorded in the records of the general court on the 18th December 1794.

(N) *Deed* from *Gilbert Talbot Israel* to Doctor *Charles Carroll,* dated the 26th of June 1732, for all the lands devised to the said *Gilbert* by his father.

(O) *Deed* from *Robert Israel* to *Charles Carroll* and Company, dated the 26th of August 1743, for all the lands devised to the said *Robert* by his father, covenanted to be 275 acres of *Yates his Forbearance.*

(P) *Deed* from *Robert Chapman,* (son and heir of *Robert,*) to *Daniel Dulany* and Company, dated the 23d of December 1749, for 100 acres of the said tract of land.

(Q) *Deed* from *Joshua Sewell* to *Richard Colegate,* dated the 12th of November 1716, for 100 acres, part of the said tract, described by courses and distances.

(R) *Will* of *Richard Colegate,* dated the 8th of August 1721, devising the said 100 acres to his son *Richard Colegate,* and to his heirs *in tail.*

(S) *Common Recovery* suffered by *Richard Colegate* in the provincial court at October term 1735, docking the estate tail on the said 100 acres of land.

(T) *Deed* from *Richard Colegate* to *Charles Carroll* and Company, dated the 29th of October 1735, for the said 100 acres of land.

(U) *Deed* from Doctor *Charles Carroll* to *Benjamin Tasker, Charles Carroll,* Esquire, *Daniel Dulany,* and *Daniel Carroll,* of *Duddington,* dated the 25th of September 1733, conveying sundry tracts of land, and amongst others the land in question, to be held by all the above persons in company, &c.

(V) *Will* of *Charles Carroll,* Esquire, dated the 19th of June 1780, devising his part of the said tract

Oct. 1801

Carroll
vs.
Norwood

of land to his son *Charles Carroll,* of *Carrollton,* one of the lessors of the plaintiff.

(W) *Will* of *Charles Carroll,* of *Duddington,* [son and heir of *Daniel Carroll,* of *Duddington,*] dated the 12th of March 1768, devising his part of the said land to his son *Daniel Carroll,* of *Duddington,* another of the said lessors.

(X) *Evidence,* that Doctor *Charles Carroll* departed this life, leaving *Charles Carroll,* Barrister, his heir at law.

(Y) *Will* of *Charles Carroll,* Barrister, dated the 7th of August 1781, devising his part of the said land to *Nicholas Carroll,* another of the said lessors.

(Z) *Will* of *Benjamin Tasker, junior,* dated the 5th of October 1760, devising all his lands to his father, *Benjamin Tasker.*

(AA) *Will* of *Benjamin Tasker,* dated the 15th of February 1766, devising that all his lands be sold by *Ann Ogle, Christopher Lowndes* and *Robert Carter,* or the survivor of them.

(BB) *Deed* from *Ann Ogle* and *Robert Carter* to *Daniel Dulany,* dated the 14th of September 1770, for the said part of the said land, which was devised to be sold by the said *Tasker.*

(CC) *Deed* from *Daniel Dulany* to *Robert Carter,* another of the said lessors, dated the 2d of December 1786, for the last above mentioned part of the said land.

(DD) *Will* of *Daniel Dulany* (named in the deed from Doctor *Charles Carroll,*) dated the 26th of February 1752. In this will no mention is made of the land in dispute, nor is there any residuary devise. [It appears, that on the 26th of November 1759, *Walter Dulany* conveyed to *Daniel Dulany* all his the said *Walter's* undivided moiety or half part of and in a fifth part or share of and in a certain Iron Works, commonly called *The Baltimore Iron Works,* and all lands, &c. belonging to the said company, &c. That on the said 26th of November 1759, *Daniel Dulany* conveyed to *Walter Dulany* one moiety, or full half part of all his the said *Daniel's* right and inte-

rest in the said Iron Works, lands, &c. reciting in the said deed, that the honourable *Daniel Dulany*, deceased, being seised and possessed of one fifth part or share of the said Iron Works, &c. conveyed his said fifth part or share, and every thing thereunto belonging, to his sons, the said *Daniel* and *Walter*, for and in consideration of the natural love and affection, &c. That the said *Daniel* and *Walter*, the sons, in virtue of the said conveyance, actually entered and became seised, &c. That the said *Walter* had executed a deed, bearing even date with this deed, conveying to the said *Daniel* in fee simple, all his the said *Walter's* undivided moiety or half part of the said fifth part or share in the said Iron Works, to the intent and purpose that the legal right in the said whole fifth part or share of the said Iron Works might be vested in the said *Daniel*, in order that by the operation, vigor and effect of the said deed, and also of these presents, a partition or division might result, take place and be effectuated, and all right of accretion or survivorship be prevented or destroyed between the said *Daniel* and *Walter*, in respect of their interest, part or share, in the said Iron Works, both real and personal, &c.]

(EE) *Deed* from *Daniel Dulany*, son and devisee in the will of the said *Daniel* above mentioned, to his son *Daniel Dulany*, dated the 16th of September 1772, for one tenth part or share of the lands, &c. belonging to the *Baltimore Company*.

(FF) *Evidence*, that the lands conveyed by the last mentioned deed were confiscated to the state as British property.

(GG) *Evidence*, that *Walter Dulany*, son and devisee in the will of the said *Daniel* above mentioned, died intestate, and left a son and heir named *Daniel*, and that the lands which descended to the last mentioned *Daniel*, from his said father, were also confiscated to the state as British property.

(HH) *Deeds* from the *Chancellor*, acting on behalf of the state, to *Abraham Van Bibber*, another of the said lessors, one dated the 5th of February 1787, and

Oct. 1801.

Carroll
vs.
Norwood

the other dated the 19th of September 1792, for one
half of one tenth of the said lands confiscated as afore-
said, as the property of the said *Daniel Dulany,* of
*Daniel,* and for one half of one tenth of the said lands
confiscated as the property of *Daniel Dulany,* of *Wal-
ter.*

(II) *Deed* from the *Chancellor* as aforesaid, to *Isaac
Van Bibber,* another of the said lessors, dated the 11th
of October 1792, for one fifth of one tenth of the said
lands, confiscated as the property of *Daniel Dulany,*
of *Walter.*

(JJ) *Deed* from the *Chancellor* as aforesaid, to *Wil-
liam Smith,* the other of the said lessors, dated the
12th of December 1792, for four fifths of one tenth
of the said lands, confiscated as last aforesaid.

(KK) *Deed* from *George Yate* to *Thomas Cockey,*
dated the 23d of August 1726, for 144 acres of the
tract of land called *Forbearance,* and all his the said
*George's* right, &c. as eldest son of his father, or un-
der and by virtue of his father's will, &c.

(LL) *Deed* from *Thomas Cockey* to *Daniel Dulany,*
*Benjamin Tasker, junior, Charles Carroll,* Esquire,
Doctor *Charles Carroll,* and *Charles Carroll,* son and
heir of *Daniel Carroll,* of *Duddington,* dated the 29th
of December 1748, for 140 acres more or less, part
of *Yates his Forbearance,* described by courses and
distances.

(MM) *Deed* from *John Lacon Israel* to *Charles Car-
roll,* Esquire, *Benjamin Tasker, Charles Carroll,* son of
*Daniel, Charles Carroll.* Barrister, *Daniel Dulany,*
and *Walter Dulany,* dated the 17th of September 1761,
(reciting the former deed to *Tasker,* which by mis-
take was recorded amongst the records of *Anne-Arun-
del* county,) conveying the same 100 acres, which had
been covenanted to be conveyed to *Hurd,* &c.

### *Bills of Exceptions, &c.*

When a deed
was recorded is a
fact for the jury
to decide, and
they may presume
it was recorded in
the time if possession
of the land has
been held under
it.

1 The defendants objected to the deed (C) from
*George Yate* to *John Israel* being read in evidence to
the jury, it not appearing that the same was recorded
within the time limited by law, and there being no
evidence presented or offered to the court or jury that

the said *John Israel*, or those claiming under him, ever did possess or hold any land in virtue of or under that deed.

CHASE, Ch. J. *(a)* The Court are of opinion that the time of recording the deed is a matter of fact to be decided by the jury; and if it appears to them that the possession of the land mentioned in the deed has been held according to the deed, the jury may and ought to presume the said deed was recorded within the time limited by law; and on that ground the court admit the copy of the deed to be read to the jury, subject to the future direction of the court in case such possession is not proved. The defendants excepted.

2 The defendants prayed the opinion of the court and their direction to the jury, that the deed (C) from *George Yate* to *John Israel* is only competent to convey so much of the land called *Yates his Forbearance*, being the land mentioned in the said deed, and of which a part was thereby intended to be conveyed, as is included and comprehended within the lines expressed and specified in the said conveyance, even though the quantity so conveyed should be less than half the land included in the patent for the said tract.

*A deed expressing to convey a moiety of a tract of land, but describing it by courses and distances, is only competent to convey so much of the land as is included within the lines expressed in the deed.*

THE COURT were of that opinion, and so directed the jury.

3 The deed (C) from *George Yate* to *John Israel* is located by the plaintiff on the plots returned in the cause, from A to 6, to 11, to 21, to 22, to 23 and to A. The defendants objected to the reading the said deed in evidence to the jury, because it did not appear by the said deed, or by any other evidence produced, that the same had been recorded within the time limited by law; because there was no evidence produced to the court or jury to shew that the said *John Israel*, or those claiming under him, ever possessed any lands in virtue of that deed; and because there being no possessions of the plaintiff, or those under whom he claims, located upon the plots returned in this cause,

*Where land comprehended in a defective deed is located on the plots, evidence may be given of possession, &c.*

*(a) Duvall* and *Done*, J. concurred.

Oct 1801
Carroll
vs.
Norwood

as being within the lines of the land included within the said deed as located by the plaintiff, he the plaintiff could not be permitted to give any evidence of possession under the said deed.

CHASE, Ch. J.    The court are of opinion, that as the land, comprehended within the deed from *George Yate* to *John Israel,* is located on the plots, the plaintiff may give evidence of possession of that land, although particular marks or places of possession are not located.    The defendants excepted.

*An ancient deed, not recorded in the records of the proper county, is evidence without proof of its execution, if possession of the land has been held under it; and the jury may find livery and seisin, &c.*
*Ancient bonds of conveyance &c admitted in evidence on proof of the hands writing of the witnesses.*

4. The plaintiff having, to shew title to the land mentioned in the declaration, produced and read to the jury the patent, wills and deeds, (A) to (I) inclusive, then produced and offered to read to the jury a deed (M) from *John Lacon Israel,* to *Benjamin Tasker,* dated the 15th of June 1750, recorded in the land records of *Anne-Arundel* county.    But the plaintiff offered no evidence of the execution thereof, or of any possession of the land mentioned in the deed by the said *Tasker,* or those claiming under him.    The plaintiff also produced and offered to read to the jury, a bond (J) from *John Lacon Israel* to *John Hurd,* with the endorsements (K) thereon.    Also a bond (L) from *John Hurd* to *Benjamin Tasker* and partners. The plaintiff also swore *Charles Ridgely* of *William,* who deposed that *Richard Croxall,* a subscribing witness to the said assignment (K) and bond (L), was dead, and that he, *Ridgely,* believed that the signing of the name of *Richard Croxall* as a witness to the said assignment and bond, was the hand writing of said *Richard Croxall,* deceased, having frequently seen him write.

To the reading of which last mentioned deed, and the two last mentioned bonds, the defendants objected, and prayed the opinion of the court, whether the said deed and bonds were proper to be read as evidence to the jury in this cause.

CHASE, Ch. J.    The court are of opinion, that the deed from *John Lacon Israel* to *Benjamin Tasker,* being an ancient deed, is evidence to the jury, with-

out proof of the execution, if the jury shall find the
possession of the land has been held under the deed;
and that the jury may and ought to presume and find
livery and seisin of the land, if they find the posses-
sion has gone and been held according to the deed.

The court are also of opinion, that the bonds from
*John Lacon Israel* to *John Hurd,* and from *John Hurd*
to *B. Tasker* and others, are legal and admissible evi-
dence in this cause, and proper to be read to the jury.
The defendants excepted.

5. The defendants produced and shewed to the
court, a deed from the said *John Lacon Israel* to *Ed-
ward Norwood,* father of the defendants, dated the
28th of March 1760, for "all his right," &c. "of and
in a tract of land called *Goshen, Addition* and *Cannon's
Delight;* also all his right," &c. "unto any tracts or
parcels of land devised to the said *Israel* by his fa-
ther's last will and testament, or otherwise as heir at
law, have become the property of him the said *J. L.
Israel.*"

The defendants objected to the reading of the said
deed (M) from *John Lacon Israel* to *Benjamin Tasker,*
unless the execution of the same was proved.

*S. Chase, Jun.* for the plaintiff, to shew that the
deed may operate as a feoffment, and that every deed
will operate to effectuate the intent of the parties,
cited *Shep. T.* 83, 84.   2 *Wils.* 22, 75, 79.    *Gilb. L.
E.* 103, 161.   13 *Viner,* 206.   1 *Roll. Rep.* 132.   1
*Wood.* 530.

*Mason,* contra.   Two things are required—If the
deed is to operate as a feoffment, it must be prov-
ed, and if possession has gone along with the deed,
then livery shall be presumed, though it be not prov-
ed; but if possession has not gone along with the
deed, then the livery upon the feoffment must be prov-
ed.   *Lofft's Gilb.* 105.

*Martin,* (Attorney General,) for the plaintiff.   The
endorsement made on the deed by the clerk of *Anne-
Arundel* county, is evidence of the deed's being 50

*Margin notes:*

Oct. 1801
Carroll
vs.
Norwood

An ancient deed
is evidence with-
out proof of the
execution, if the
jury find posses-
sion of the land
has been held un-
der it, and they
may and ought to
presume and find
livery and seisin,
&c.

years old; and the acknowledgment before a justice of the provincial court, is conclusive evidence of its execution.

CHASE, Ch. J. The Court are of opinion, that the deed from *John Lacon Israel* to *Benjamin Tasker,* being an ancient deed, is evidence to the jury, without proof of the execution, if the jury find the possession of the land has been held under the deed: and that the jury may and ought to presume and find livery and seisin of the land, if they find the possession has gone and been held according to the deed. The defendants excepted.

A deed although located on the plots by a wrong date, may be read in evidence in support of the lo- cation,

6 The surveyor of Baltimore having certified that he had located for the plaintiff, upon the plots returned, a deed (E) from *John Yate* to *Robert Chapman,* dated the 5th of March 1715, beginning at the end of the 6th line of *Yates his Forbearance,* at D, and running from thence to 19. to 20, to 16, and to D. as described upon the said plots, the plaintiff produced and offered to read to the jury, the said deed from *John Yate* to *Robert Chapman,* whereby is granted, &c. all that piece or parcel of land lying on the N. side of Patapsco river, in the county aforesaid, beginning at a bounded gum, and running S 160 ps. to a bounded black oak, then E. 100 ps. then N. 160 ps. then W. 100 ps. to the first tree, containing 100 acres more or less, being part of a tract of land called *Yates his Forbearance.* [The time when the deed was recorded is not mentioned.] The plaintiff also produced and offered to read to the jury, a deed (P) from *Robert Chapman* to *Daniel Dulany,* dated the 23d of December 1749—which deeds were produced and offered to be read to the jury, in order to make title to the land as located upon the plots in manner aforesaid from D to 19, &c. To which the defendants objected, because the said deeds, so offered to be read in evidence by the plaintiff, are not located upon the said plots. The plaintiff offered in evidence to the jury a sworn copy of the instructions delivered to the surveyor to lay down the said deeds, viz. "Locate deed, *Yate* to

*Chapman*, beginning at the end of the sixth line of the whole tract, thence running S. 160 ps. then E. 100 ps. then N. 160 ps. and thence to the beginning, correcting the variation by allowing one degree for every 20 years from the date of the certificate," &c. The plaintiff offered to prove by a witness, that he delivered to the surveyor the said deed from *Yate* to *Chapman*, with the instructions to lay the same down; as also the said deed from *Chapman* to *Dulany*.

CHASE, Ch. J. The Court are of opinion, that the deeds from *Yate* to *Chapman*, and from *Chapman* to *Dulany*, are located on the plots, and they allow the same to be read in support of the location. The defendants excepted.

7 The plaintiff having located the deed (E) from *John Yate* to *Robert Chapman*, to begin at black D, as designated upon the plots, and to run from thence to 19, to 20, to 16, and to D, the defendants examined a witness, who had been sworn on the survey, as to the fence designated on the plots from red h to red k, and who gave evidence as to the making of that fence by the defendants. The defendants then, to disprove the beginning of the said deed from *Yate* to *Chapman*, so set up by the plaintiff as aforesaid at black D, off. red to prove by the said witness the place where. about 15 years ago, there stood an ancient gum tree, marked as a boundary, with the letters RC upon it, which place is in the said line of fence from red h to red k, and near the letter red k; that at the time he saw the said gum tree it was then dead, and had the appearance of having been marked a great many years before that time, and that the said gum tree is now down and gone.

*Evidence as to where a tree stood, not admitted, unless the place is located on the plots,*

CHASE, Ch. J. The Court are of opinion, that inasmuch as the gum tree, or the place where it stood, is not located on the plots, the evidence offered is inadmissible, and cannot legally be received. The defendants excepted.

Oct. 1801

Carroll
vs
Norwood

Deeds of bargain and sale only, before the act of 1766, *ch* 14, could be acknowledged · and recorded.

No instance of a deed's being acknowledged and recorded for safe custody: and a judge has no authority to take the acknowledgment of such a deed.

A copy of a deed not requiring enrolment, is not evidence; nor is a copy of a deed not recorded in time, proof of the original deed.

A misrecital of a deed as to its date is not material

8. The plaintiff produced and offered to read in evidence to the jury, the exemplification or copy of a deed (E) from *John Yate* to *Robert Chapman*, dated the 5th of March 1715, under whom the plaintiff claims, by divers subsequent conveyances, the part of the said tract of land called *Yates his Forbearance* therein mentioned; and the plaintiff prayed the court to allow the same exemplification or copy of the said deed to be read in evidence to the jury, as proof of the original deed, although not recorded in time, as there are words in the said deed, by which the same may operate as a deed of release, or of feoffment.

*Ridgely,* for the defendants, contended, that the copy ought not to be read in evidence to the jury for any purpose. He cited 14 *Viner*, 446. 12 *Viner*, 84, 121. *Co. Litt.* § 66, § 365. 2 *Freem.* 259. *Style's Rep.* 445. 3 *Lev.* 388. 2 *Bac. Ab.* 307, 308. 10 *Co.* 92. 3 *T. R.* 156. *Esp.* 774, 239. *Bull. N. P.* 256. 1 *Salk.* 269.

*Martin,* (Attorney General,) for the plaintiff, contended, that an ancient deed, at common law, was good, although it had not been enrolled within the time limited by law. He cited the case of *Hoddy vs. Harryman, (3 Harr. & M'Hen.* 381.) He also cited 1 *Ventris,* 296. 1 *Salk.* 280. *Comb.* 247. 2 *Bac. Ab.* 308. 3 *Com.* 280. 3 *Lev.* 388. He also cited 1 *Ld. Ray.* 746, to shew that a copy of the enrolment of a deed may be given in evidence. Where a copy may be admitted in evidence though not examined, 1 *Mod.* 4. That even recitals in a deed, under certain circumstances, are evidence of the deed, 6 *Mod.* 44, 45. That an engrossed copy, though not executed, may under certain circumstances, be given in evidence, *Ambler,* 247, 248.

CHASE, Ch. J. There is no instance of a deed's being acknowledged and recorded 'for safe custody; but all deeds are acknowledged and recorded under acts of assembly. Deeds of bargain and sale *only,* previous to the act of 1766, *ch.* 14, could be acknow-

ledged before a judge or justices. A copy of a deed not requiring enrolment, is not evidence to be read to the jury. A misrecital of a deed as to its date, is not material, other matter recited being certain. The Ch. J. cited 3 *Lev.* 387. 2 *Freem.* 259. *Viner,* tit. *Evidence. Statute* 10 *Ann, ch.* 18.

Oct. 1801

Carroll
vs.
Norwood

The court are therefore of opinion, that the copy of the deed from *John Yate* to *Robert Chapman,* cannot be received in evidence as proof of the original deed, the same not having been recorded within the time prescribed by law. And in the opinion of the court, the justices before whom the same deed was acknowledged, had no authority to take the acknowledgment of a deed to be recorded for safe keeping. The plaintiff excepted.

9. The plaintiff prayed the opinion of the court, and their direction to the jury, that if the jury are of opinion from the evidence, that *Benjamin Tasker,* or *Benjamin Tasker* and Company, had possession, under assignment (K) from *John Hurd,* of the land and premises mentioned in the deed (M) from *John Lacon Israel* to *Benjamin Tasker* and Partners, of the 15th June 1750, *at the time the same was executed,* then the said deed operates to convey, as a release, the fee to *Benjamin Tasker,* and the deed to *Edward Norwood* in 1760 cannot operate to convey the same land.

Where the grantee in a defective deed is in possession of the land under a bond of conveyance, such deed will operate to convey, as a release, the fee to the grantee, and a subsequent deed from the grantor to another person will not operate to convey the same land

THE COURT gave to the jury the direction as prayed.

10. The plaintiff gave in evidence to the jury the patent, wills, deeds, &c. (A) to (M) inclusive, which last deed (M) the court ruled might operate to pass the land, if livery of seisin had been made thereon; and that livery of seisin might and ought to be, by the jury, presumed, if possession had gone therewith; or, that if the said *Tasker* was in possession of the land mentioned therein at the time the same was executed, then the same might operate as a deed of release; and that the same being recorded under the de-

But such defective deed will not operate as a bargain and sale so as to affect the title of such other person, unless he had notice, &c

Oct. 1801

Carroll
vs.
Norwood

A deed recorded by decree of the chancellor under the act of 1785 ch 72 s. 11, to have the same validity, as if it had been recorded in time, against all persons who do not come within the exceptions contained in the act

cree of the chancellor, it will have the same validity, as if it had been recorded within six months, against all persons who do not come within the exception contained in the act of assembly in such case made and provided. The plaintiff then offered in evidence the deeds, wills, &c. (N) to (MM) inclusive. He also gave in evidence the location on the plots in this cause of a tract of land called *United Friendship*, or *The United Friendship*, granted to *John Larkin* on the 1st of September 1687, and that the location thereof, as made by the plaintiff, was correct; and he shewed in evidence to the jury the grant of the said land. He also offered in evidence to the jury, that the several deeds and wills heretofore mentioned, were all duly executed, and that all the said deeds were recorded in time, except the said deed (E) from *John Fate* to *Robert Chapman*, and the said deed (M) from *John Lacon Israel* to *Benjamin Tasker*. He also gave in evidence, that the said deeds located on the plots, and the other locations thereon made by the plaintiff, are by him truly located. He also gave evidence that a division or partition had been made between the two devisees of *George Fate*, the patentee, of the tract of land called *Fates his Forbearance*; and also, that a division or partition had been made between the devisees, of the lands devised to them by *John Israel*. The plaintiff further offered in evidence to the jury, that in consequence of the said sale and bond (J) made by *John Lacon Israel* to *John Hurd*, the said *Hurd* entered into the possession of the said 100 acres of land, mentioned in the said bond and condition thereof, and possessed and enjoyed the same until he made the assignment aforesaid (K) to *Benjamin Tasker* and Company, and the purchase money was paid to the said *Israel*; and that when the said *Hurd* so assigned his interest therein to the said *Tasker* & Co. he became the tenant of the said *Tasker* & Co. and held and possessed the said land as their tenant, and for their use, until some time in the last of the year 1749, when he delivered up the said land and the possession thereof, unto the said *Tasker* & Co. who en-

tered thereupon, occupied and possessed the said land, until some time in the year 1754, without any dispute; and that from that time, until within about ten years past, the said *Tasker* & Co. have possessed and enjoyed the said land; and further, that the said deed (M) executed by the said *John Lacon Israel* to the said *Benjamin Tasker,* contains the same land, for the conveyance of which the said bond (J) was given, and was executed by the said *John Lacon Israel* to complete the title of the said *Tasker* & Co. therein, and to vest them with a fee simple estate therein.

And the defendants having offered in evidence to the jury the deed from *John Lacon Israel* to *Edward Norwood,* dated 28th of March 1760, as conveying to the said *Norwood* the same land included in the said bond (J) and the said last mentioned deed (M,) to the said *Tasker,* and as giving him a title to the same, the plaintiff proved, that on the *debt books* the defendants are not charged with any part of the tract of land called *Yates his Forbearance;* and proved by the assessor of Baltimore county that no such land was given in by the defendants, as belonging to them, to be assessed; and that the lessors of the plaintiff are assessed for the whole of the said tract of land, and pay assessment for the whole thereof.

The plaintiff prayed the opinion of the court, and their direction to the jury, that under the general expressions used in the said deed to the said *Norwood,* no land could be intended to pass, except those tracts of land to which the said *John Lacon Israel* had a right at the time when he executed the deed to the said *Norwood;* and that it could not be the intent of either of the parties, that by those general words the land should be included and pass, which the said *Israel* had thus contracted to sell thirty years before, for which he had been paid, and which ten years before he had included in the deed (M) executed by him in 1750 to *Benjamin Tasker,* and of which the said *Tasker,* and *Hurd* from whom he purchased, had been in possession for about thirty years next preceding the execution of the said deed to the said *Norwood.* That those general

Oct. 1801

Carroll
vs.
Norwood

expressions ought not to be construed so as to include the said land contrary to what was the evident intent of the parties, as that construction also would be to the injury of rights long acquired by the said *Hurd* and *Tasker*, and make the said *John Lacon Israel* guilty of fraud, and therefore that the said deed to the said *Norwood* could not be considered as passing the land so included in the deed (M) from the said *Israel* to the said *Tasker*.

CHASE, Ch. J. The Court are of opinion, that the deed from *John Lacon Israel* to *Benjamin Tasker*, cannot operate as a deed of bargain and sale, so as in any manner to affect the title of *Edward Norwood*, or those claiming under him, which *Norwood* acquired under the deed to him from *John Lacon Israel*; that deed operating, in the opinion of the court, to pass the land described and mentioned in the deed from *John Lacon Israel* to *Benjamin Tasker*, unless *Norwood* had notice of the last mentioned deed at or before the time of the execution of the deed to him from *Israel*; and therefore the court refuse to let the deed from *Israel* to *Tasker* be read in evidence to the jury as a deed of bargain and sale. The plaintiff excepted.

Defendants in an action of ejectment, after they have taken a joint defence, are not permitted, at the trial, to sever their defence

11. The plaintiff in this cause, having heretofore brought an ejectment for the lands in question, which was at May term 1799, nonsuited after the present action was brought, to wit, on the 24th of September 1800, the lessors of the plaintiff, by their agent *William Hammond*, entered into an agreement with *Samuel Norwood*, one of the defendants, "that the plots used in the former ejectment, which was tried between *C. Carroll* & Co. and *E. and S. Norwood*, shall be used in the cause now depending between the same plaintiffs and *Samuel Norwood*, each party having liberty to make such amendments to those plots as they may think necessary. That the admissions of boundaries, proofs, and depositions taken in the former cause between the same parties, shall be received in evidence in the same manner as if they had been taken in the present suit."

Before the jury was sworn in the present action, the said *Samuel Norwood* objected to the plots made out in this cause being used against him, and prayed that the court would permit him to sever in his defence, alleging that in consequence of the agreement aforesaid, he had not attended to make any defence on the present plots; which motion was overruled by the court. After the jury was sworn, the said *Samuel Norwood* again produced the said agreement to the court, and offered to prove that the defence in this cause, which appears to be a joint defence, was conducted and managed by *Edward Norwood*, the other defendant, alone; that he the said *Samuel Norwood*, either by himself or counsel, did not in any manner concern therein. The said *Samuel Norwood* prayed the opinion of the court, and their direction to the jury, that the plaintiff was precluded under the agreement aforesaid, from recovering any land in the possession of the said *Samuel Norwood*.

The plaintiff shewed that every location on the plots in the former suit were transferred to the plots in this cause.

THE COURT refused to permit *Samuel Norwood* to sever in his defence, and refused to give the direction prayed. The defendant, *(Samuel Norwood,)* excepted.

12. The defendants offered to swear witnesses to the jury, to prove that they, the defendants, have been in the exclusive possession, by enclosure by fences, for more than twenty years next before the bringing of this action, of all the lands included within certain lines located, laid down, and designated on the plots returned in this cause, viz. beginning at, &c.

CHASE Ch. J. The court are of opinion, that as the defendants have not located their adversary possessions on the plots, such evidence cannot be admitted to the jury. The defendants excepted.

13. The defendants, to support title in themselves to a moiety of a tract of land called *The United Friendship,* produced and offered to read in evidence

Oct. 1801

Carroll
vs.
Norwood

*If the adversary possessions of the defendant are not located on the plots, no evidence can be given of them*

*The record of an ancient deed appearing not to have been signed by the grantor, but acknowledged by him, admitted in evidence*

Oct. 1801.

Carroll
vs.
Norwood

to the jury, a patent to *John Larkin* for the said land called *The United Friendship*, granted the 1st of September 1687; and also a paper, purporting to be a deed from *John Larkin*, son and heir of the patentee, to *Edward Dorsey*, dated the 25th of June 1702; [and the record book in which the said deed is enrolled was also produced, and the defendants offered to read the said deed from the said record book.] It purported to be made between *John Larkin* and *Thomas Larkin*, of the one part, and *Edward Dorsey*, of the other part, for "all that moiety or half part of a tract of land called *The United Friendship*," &c. It does not appear to have been signed or sealed by either of the grantors. The name "*Thos. Larkin*" is signed under those of the witnesses; and it was acknowledged by *John Larkin*, on the 27th of June 1702, before two justices of the provincial court. There is no mention of the time of recording.

To the reading of which deed in evidence the plaintiff objected.

Chase, Ch. J.   The court are of opinion, that the deed from *John Larkin* to *Edward Dorsey* is evidence, and they permit the same to be read to the jury. The plaintiff excepted.

'Where A. is in possession of land under a deed to him from B, a copy of an ancient deed not enrolled in time, from C to B for the same land, though misrecited in the deed from B to A, with the rent roll entries, &c are evidence sufficient for the jury to presume and find a deed from C to B

A copy of a deed not enrolled in time, made by a clerk under seal of office, is entitled to no more weight or credit, than a copy taken by a private person

14. The plaintiff offered to read in evidence to the jury, the enrolment of a deed (E) from *John Yate*, son and devisee of *George Yate*, the patentee of the tract of land called *Yates his Forbearance*, to *Robert Chapman*; and to prove that a deed, (of which the said last mentioned deed is a copy,) was executed by the said *John Yate* to *Robert Chapman*, the plaintiff offered in evidence to the jury the entries on the *Rent Rolls* in the land office, viz. "100 acres, (*Yates his Forbearance*,) *Robert Chapman* from *John Yate*, 5th March 1715," &c. Also a deed (P) from *Robert Chapman*, the son and heir of the said *Robert*, to *Daniel Dulany* and Company, as a deed for the same 100 acres of land. And also offered evidence to prove that no other conveyance of any nature or kind was

made or executed by the said *John Yate* to the said *Robert Chapman,* except the deed (E) of the 5th of March 1715. And also offered in evidence to the jury the *Debt Books* in and for Baltimore county, in which the said 100 acres of land were charged to *The Baltimore Company,* consisting of the persons named in the said deed (P) from *Chapman* to *Dulany,* & Co. And also offered in evidence the possession of the said *Dulany,* & Co. from the date of the said last mentioned deed to within seven years last past, by actual cultivation of a part of the said land described in the said deeds (E) (P) of the 5th of March 1715, and the 23d of December 1749, under and in virtue of the said title; and that the defendants did not claim any part of the tract of land named in the declaration, as part of *Yates his Forbearance;* and that no evidence of any nature was produced or offered on the part of the defendants to prove that the right or title of the said 100 acres, or any part thereof, was in the defendants or in any other person or persons than the said *George Yate, John Yate, Robert Chapman, Daniel Dulany* and Company, or those claiming under them.

The defendants offered in evidence the deed from *John Lacon Israel,* son and devisee of *John Israel,* to *Edward Norwood,* the father of the defendants, dated the 28th *of March* 1760, herein before mentioned; and also offered to prove to the jury possession of such part of the land as they have taken defence for on the plots in this cause, in *Edward Norwood,* the father, in his life-time, and in the defendants since his death, from the year 1757 to the present time, and possession of the same in the defendants at this time; and that the said *Edward Norwood,* the father, and the present defendants, respectively claimed and held the same under the said deed from *John Lacon Israel* to *Edward Dorsey.*

CHASE, Ch. J. The Court are of opinion, that if the jury find the facts stated by the plaintiff, and that *Daniel Dulany* and Company have been in possession

of the land described in the deed from *Robert Chapman* to *Daniel Dulany* and Company, from the date of the deed to within seven years last past, that then the copy of the deed from *John Yate* to *Robert Chapman*, with the said facts, are sufficient evidence to induce the jury to presume and find a deed from *John Yate* to *Robert Chapman*, for the land described in the deed from *Robert Chapman* to *Daniel Dulany* and Company.

The Court are also of opinion, that the said copy is entitled to no more weight or credit than a copy taken by a private person.

A judgment entered on a verdict for the plaintiff in ejectment for land described to begin at a point (not located on the plots,) to be found by running a certain line &c being for land not described by any particular location on the plots, but which was included within the plaintiff's pretensions

*Verdict.* The jury find, "that the beginning of *Yates his Forbearance,* the land mentioned in the declaration, is at the point to be found by running from the red letter B, as marked on the plots, N. 4¼° W. 160 perches; that from this point the said land called *Yates his Forbearance* is to be located, according to the courses and distances expressed in the patent for the said land, with an allowance for variation of 4¼ degrees; and the jury find for the plaintiff all the land within the lines of the land called *Yates his Forbearance,* as so located."

*Motion* by the defendants in arrest of judgment. *Reasons*: "That no judgment ought to be given upon the verdict, because there is no finding in the said verdict sufficiently certain to authorise the court to give a judgment."

The motion was continued by the court until the present term, (October 1801,) when it was withdrawn by the defendants' counsel, and a judgment was entered upon the verdict for the plaintiff, for possession, &c.