(Decided June 28th, 1860.)

---

# CHRISTIAN KEENER *vs.* HIRAM H. KAUFFMAN.

Where, to the plea of *liberum tenementum*, the plaintiff replies specially, a term created by the defendant, the freehold of the latter is admitted with the assertion of a right of possession in the plaintiff under the term, and under that issue the plaintiff's right of possession is the question to be decided.

But where *issue is joined* on the plea of *liberum tenementum*, the freehold of the defendant is in issue and the jury have nothing to do with the right of possession, because the plaintiff's traverse of the plea admits the defendant's right to the possession, if the jury find him entitled to the freehold.

Keener vs. Kauffman.

If there be evidence *explaining* the character of an entry and possession by enclosure for twenty years, by the plaintiff, and those under whom he claims, an instruction that this is sufficient to bar the entry of the owner, without leaving it to the jury to ascertain the fact of *adverse possession*, from all the proof in the case applicable to that question, is erroneous.

In such a case it is for the jury to ascertain the fact of adverse possession, from all the proof in the case, embracing the intent with which the entry was made, the nature of the possession, and the acts of ownership, conduct and declarations of the party under whom title by possession may be claimed.

The declarations of a man respecting his title, made before he parts with his estate, are evidence against him and all claiming under him.

Where a plaintiff relies on title by possession, which must be adverse to the owner, the declarations of one of the occupants under whom he claims, as to the character and extent of the possession, showing that such occupant entered without claim of title, are admissible in evidence against the plaintiff.

APPEAL from the Superior Court for Baltimore County.

*Trespass quare clausum fregit,* brought on the 7th of December 1852, by the appellant against the appellee. Plea *non cul.,* and defence on warrant. A warrant of re-survey was issued, and plats, containing the locations, made and returned, with testimony taken on the survey. It was then agreed that the plea of *liberum tenementum,* shall be conceded to have been pleaded by the defendant.

*Exception.* Much testimony, oral and documentary, was offered on both sides. It appears from it that the defendant had the *paper title.* The plaintiff proved possession under a contract of purchase from Nathan Tyson, dated the 23rd of June 1851. He then proved the removal of the fence from the place where it was standing before this suit was brought, and the commission of the trespass by the defendant. He further proved that the fencing about the land, as located by the plaintiff, was put there in 1817, by Jessop, as far as concerns the northern line thereof, the land of Jessop and the land in dispute being adjacent; that the land in dispute was in wood and was enclosed by George Ellicott, deceased, his outer fencing being run up to the fencing built

by Jessop; that Nathan Tyson, who married the daughter of George Ellicott, held possession of the land as agent for said Ellicott before his death, which took place in 1832, and continued in possession after his death till the sale to the plaintiff, and that there was no other boundary known between said Ellicott and the adjoining lot north; that the enclosure was uninterrupted from 1816 or 1817, down to the year 1845, when the fences needed repairing.

The defendant proved by George Myers, that he had known the land in controversy about fifty-six years, and bought his lot adjoining in 1836, which he held till 1851, and lived on it about eighteen years; that, in 1843, the fence enclosing the land in controversy was down, and the lot was pastured by people from town with old horses and cattle, and it remained for two years a common; witness saw the property every day, and put up the fence after it had been open for two years. This witness further proved that he had a conversation with Nathan Tyson, under whom the plaintiff claims, in the year 1851, when said Tyson offered to sell witness the land belonging formerly to George Ellicott, and said there was a lot of two or three acres adjoining which he did not claim, and it was more than probable that whoever got his (Tyson's) lot would get this, (the two or three acres,) as there was no owner for it. To the admissibility of this conversation the plaintiff objected, but the court overruled the objection and permitted the same to go the jury. Myers then further proved that the land in dispute never was cultivated by Ellicott or Tyson, or any one else, whilst they held it in possession, and that the stumps on the land were only removed by the plaintiff after he purchased from Tyson. The defendant further proved by John Nicholson, that he (the witness) purchased in 1851, from Nathan Tyson a lot of land, when Tyson requested witness to buy the land afterwards sold by him to the plaintiff, and said that whoever did buy it might get the lot adjoining, to which he could give no title, as he had none to it.

The plaintiff then proved by Nathan Tyson, that he might have had a conversation with Myers, as testified to by the

latter, but has no recollection that he ever had; that he held the land as agent for George Ellicott, and told the plaintiff when he sold to him, that persons had informed him that there was a difficulty about the title to some part of it, but he thought it belonged to George Ellicott. He also proved by James Tyson, that some time before 1845, Myers complained to witness of the condition of the fence enclosing this land, and, as well as witness recollects, there were not more than three pannels missing, and that $125 paid for the whole of the repairs. The plaintiff also proved, by Joshua Jennings, that the fences were only in the condition of other fences when rotten, and then asked three instructions to the jury as follows:

1st. If the jury believe, from the evidence, that the plaintiff was in possession of the property located as his premises, and find that the trespass, as alleged in the declaration, was committed by the defendant, and that the defendant took down and removed the fence, referred to by the witnesses, from its original position, while the plaintiff was so in possession, and put it up in its present place, then the plaintiff is entitled to recover such damages as the jury find, from the evidence, he shall have sustained.

2nd. That if the jury find, from the evidence, that George Ellicott was in possession of the property, as located within the plaintiff's premises, in the year 1817, by actual enclosure and by the use and cultivation of the property so enclosed; and if the jury further believe, from the evidence, that he so continued in the possession of the same by himself, or his tenants, until April 1832, and that about that date Ellicott died, and that Nathan Tyson having, previous to that event, intermarried with the daughter of said Ellicott, continued in possession subsequent to that time until the year 1845, and that the plaintiff bought the same by contract, dated the 23rd of June 1851, and took possession under the same, that then the entry of the defendant is barred, and the plaintiff would be entitled to recover.

3rd. If the jury find, from the evidence, that George Ellicott entered upon the actual possession of the land as lo-

cated by the plaintiff on the plats, in this cause, and enclosed the same by fences, as stated in the proof, in the year 1817, and having thus enclosed it, occupied, used and cultivated it, and so continued in the occupation, use and cultivation thereof until his death, on the 4th of April 1832, and if the jury further find, from the evidence, that Nathan Tyson intermarried with the daughter of said George Ellicott, who was living at the death of her father, and that her husband, the said Nathan Tyson, immediately after the death of the said Ellicott, entered upon the possession of the said lot and occupied, used and cultivated it, in the same manner as did the said George Ellicott, and continued so to do with the said fences up until the year 1845, then the jury are bound to presume a deed of the piece of land in dispute in this cause, from the defendant, or those under whom he claims, to the said Tyson.

The court (PRICE, J.) rejected all these prayers, and verbally instructed the jury, that the will of George Ellicott was like a deed of bargain and sale, which would not operate at law to render the possession of the devisee continuous with that of the devisor, and would not in law constitute the same possession, and that the one must, therefore, in estimating the period of limitations, be taken as distinct from the other, and could not be added together so as to make one possession.

The plaintiff excepted to the rejection of his prayers, and to the overruling of the objection to the testimony of George Myers, above stated. The verdict and judgment were in favor of the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*J. C. King* and *G. L. Dulany,* for the appellant, argued:

1st. The appellant's first prayer is based on the general principle, that possession alone is sufficient to maintain an action of trespass against any person but the real holder of the legal title, which the defendant is required to establish in

himself. 1 *Chitty's Pl.*, 176. 1 *East.*, 244, *Graham vs. Peat.* 11 *East.*, 65, 67, *Chambers vs. Donaldson.* 4 *Taunt.*, 547, *Catteris vs. Cowper.* The plea of *liberum tenementum* admits the possession to be in the plaintiff. 2 *McCord*, 226, *Caruth vs. Allen.* 1 *Chitty's Pl.*, 503, 529. 1 *Saunder's Pl. & Ev.*, 299, e.

2nd. The second prayer is based on the evidence of exclusive possession in the plaintiff, and those under whom he claims, from the year 1817 down to the bringing of the action. Ellicott held possession from 1817, by himself and Tyson, his agent, till 1832, and this possession of Ellicott and Tyson, by the agency of Tyson, and his intermarriage with the daughter of Ellicott, before his death in 1832, may well be tacked, and the privity of title was thus sustained sufficient to make the possession continuous for the full period of more than twenty years, and the entry of the defendant was consequently barred. 1 *H. & J.*, 545, *Gibson vs. Martin.* 5 *Md. Rep.*, 247, *Hoye vs. Swain.* 1 *Johns.*, 156, *Brandt vs. Ogden.* 16 *Johns.*, 293, *Jackson vs. Thomas.* 19 *Vermont*, 164, 169, *Winslow vs. Newell.* 6 *Pick.*, 410, *Ward vs. Bartholomew.* 6 *Metcalf*, 407, 412, *Wade vs. Lindsey.* 5 *Metcalf*, 15, 32, *Melvin vs. Proprietors, &c.* 9 *Barr.*, 194, 196, *Moore vs. Small.* 5 *Barr.*, 126, 131, *Scheetz vs. Fitzwater.* 7 *Sergt. & Rawle*, 177, *Overfield vs. Christie.* 11 *G. & J.*, 361, *Wilson vs. Inloes.*

3rd. The third prayer is to the effect that the facts embraced in the second prayer will justify the jury in presuming a deed of the piece of land, in dispute in this case, from the defendant, and those under whom he claims, to Tyson, and for this see 1 *Gill*, 505, *Casey vs. Inloes;* 1 *Cowen*, 609, *Jackson vs. Camp;* 5 *Md. Rep.*, 273, *Armstrong vs. Risteau.*

4th. The testimony of Myers is excepted to as allowing the declarations of Tyson, not made in the presence and hearing of Keener, to affect the operation of his subsequent grant to Keener. They were offered as a disclaimer of title and proof of ownership in a third party. The declarations are not confined in their effect to an explanation of the possession,

but to prove title, which title the defendant is bound to prove as subsisting in himself, by the requisite mode and by the best evidence. 8 *Gill,* 30, *Maslin vs. Thomas.* 9 *Gill,* 12, *Harker vs. Dement.* 5 *Cowen,* 133, *Jackson vs. Davis.* 7 *Johns.,* 186, *Jackson vs. Vosburgh.* 10 *Johns.,* 358, *Brant vs. Livermore.*

*Benj. C. Barroll,* for the appellee:

1st. The first prayer was properly rejected, because, if Kauffman had the legal title, he was not a trespasser, whether he disturbed the premises of Keener or not. Again, if Keener relied upon possession in himself, and those from whom he claimed, as giving him a title to the land, as covering a period exceeding twenty years, then the prayer should have left it to the jury to find such *adversary* possession. This prayer claims a verdict upon the isolated fact of Keener being in possession at the time the fence was removed, even as against the party having the legal title. There was evidence that Kauffman had the legal title, and this fact is wholly left out of view; it assumes there was no evidence of legal title in Kauffman. This prayer is also defective in putting to the jury to find the trespass as a *fact,* instead of leaving them to find the facts which in law amounted to a trespass, if believed by them.

2nd. The second prayer was properly rejected, because, 1st. There was no evidence of continued uninterrupted possession by Ellicott from 1817 to 1832; 2nd. There was no evidence of actual enclosure by Ellicott, during these years, and, even if there was, the prayer does not put it to the jury to find that such enclosure continued during the period of Tyson's possession. To avail anything, the jury were bound to find a possession by enclosure during the entire twenty years. 3rd. There was no evidence of the use and cultivation of the property so in possession and enclosed by Ellicott during these years. 4th. There was no evidence that Ellicott had tenants who rented and cultivated the land during these years. 5th. To make out the twenty years possession it was not competent and lawful to connect the possession of

Tyson (a stranger) with the former possession of Ellicott; there was no privity between Ellicott and Tyson. 6th. The prayer is defective in not requiring the jury to find the possession of Ellicott and Tyson to have been an adversary possession. 10 *G. & J.*, 443, *Matthews vs. Ward.* The law requires a possession which is to bar the legal owner to commence and be continued as an *adversary* possession under a claim of right against the legal owner. 3 *Wash. C. C. Rep.*, 478, *Potts vs. Gilbert.* 7th. The prayer only requires Tyson's possession to continue up to 1845. If a party holds adversely for twenty years and then abandons that possession, the property reverts to the original proprietor—a grantor who designs to convey title by reason of twenty years adverse possession, must be in possession when he undertakes to convey. 8th. The prayer assumes the contract of sale from Tyson to Keener, and does not submit that fact to be found by the jury. 9th. The prayer asks the jury to find that Keener bought the land from Tyson by contract, when the record shows that Tyson was not the owner of the land. Keener's title has no foundation except under the deed from Tyson to him, which was not recorded till the 12th of April 1853, long after this suit was brought, and this deed was offered in evidence by Kauffman. 10th. The *locus in quo* was never enclosed on four sides, separate from the adjoining land.

3rd. The third prayer is liable to nearly every objection which has been suggested against the second, and to the further objection, that it involves a mere abstraction, and if granted or rejected, was entirely irrelevant. It also submitted to the jury to find that the defendant made a deed of the land to Tyson prior to 1845, when the record shows the inception of the defendant's title to have been in March 1852. Again, why presume a deed to Tyson, who testified that he held the land as *agent* of Ellicott. There was no pretence that Tyson had any title, or claimed any title, to the land. A deed is never presumed, except in favor of a party who has had an adverse possession claiming title, and this is an additional reason why the time of his possession cannot be

added to that of the previous possession of Ellicott to make up the twenty years. There is no evidence showing when Tyson took possession, although the second and third prayers both seem to assume that there is evidence of his having taken possession immediately after the death of Ellicott, of which fact the record furnishes no evidence whatever. At the period of Ellicott's death, he was not in any manner connected with this land. He became a trustee under the will of Ellicott, subsequently, by taking the place of another trustee; but when this substitution took place, there is no evidence in the record. Nor is there any evidence that he used and cultivated it in the same manner as did Ellicott. The second and third prayers are fatally defective, for the reason, if for no other, that they submit numerous facts to be found by the jury not justified by the evidence in the record.

The appellee contends that where a party goes upon land as a trespasser, or without color of legal title, in order to make twenty years possession a bar, the possession must be adverse from the commencement, and with intent to make it his own by possession. In the language of the court, in *Armstrong vs. Risteau*, 5 *Md. Rep.*, 279, the possession must be a hostile invasion of another's rights. He must, also, have actual occupancy and enclosures. Nor can one party tack his possession to that of his predecessor in the occupancy, in order to eke out the twenty years possession, where the party originally entering into possession, enters without title or as a trespasser, with or without a conveyance from the former to the latter. The moment the first intruder parts with his possession, he loses the *scintilla juris* which his former possession gave him, and the second intruder enters as a trespasser, without color of title, and he must commence *de novo* his possession, exclusive, adverse, and by actual enclosure, substantial, definite, positive and notorious. There is no privity between them, and one can pass no title to the other. The questions in the case seem to be covered by the case of *Hoye vs. Swan*, 5 *Md. Rep.*, 238 to 256, in which all the doctrines relating to this subject are set forth, and all the authorities are mentioned and commented upon by the court.

In *Armstrong vs. Risteau*, 5 *Md. Rep.*, 275, the court say: "Where different persons enter upon land in succession without title, the last possessor cannot tack the possession of his predecessors to his own, so as to make out continuity of possession sufficient to bar the entry of the owner. The possession of the one cannot be the possession of the other, because the moment the first occupant quits the possession, the legal possession of the owner is restored, and the entry of the next occupant constitutes him a new disseizor. There is no privity between them."

Another vital objection to the plaintiff's recovery in this case is, the fact that the land in controversy, (two acres,) was never enclosed on four sides, separate from the adjoining land. It was enclosed, if at all, as part of the remainder of the land conveyed to Keener by Tyson. That an actual separate enclosure is indispensable, is decided in *Armstrong vs. Risteau*, 5 *Md. Rep.*, 278.

4th. The court rightfully admitted the evidence excepted to. The evidence of Myers was offered to show the character of the holding by Tyson, and consisted of statements made by Tyson in relation to the land, and particularly that he did not claim it, had no title to it, and could give none. It was clearly admissible, upon the question of *adverse* possession, to show, that if Tyson held possession, it was not as claiming a right to do so, or with a view to the obtention of the title by length of possession. 5 *Md. Rep.*, 276, *Armstrong vs. Risteau.* 1 *Greenlf. on Ev.*, sec. 109. 2 *Phillips' Ev.*, (*4th Amer. Ed.*) 266. But if Kauffman had the paper title, and if Keener has proved no adverse continuous possession by enclosures, as the appellee contends, then the testimony excepted to, whether admissible or not, did not injure the appellant, and he has no ground of complaint.

TUCK, J., delivered the opinion of this court:

This is an action of trespass, *quare clausum fregit*, by the appellant against the appellee, which was tried on issues framed upon the pleas of *non cul*, and *liberum tenementum.* The defendant below has the paper title, the plaintiff claim-

39      v.16

ing by possession in himself, and those under whom he claims, for more than twenty years.

After the parties had offered much parol and documentary evidence, the plaintiff submitted three prayers, all of which were refused by the judge below, who gave a verbal instruction. The plaintiff excepted to the refusal of his prayers, but not to the direction as given by the court. He also ex-cepted to the admissibility of a portion of the evidence of G. orge Myers, offered by the defendant.

As the first prayer is based on the principle that possession is sufficient to maintain an action of *trespass q. c. f.*, against all persons except the legal owner, it is necessary to determine how far that doctrine applies to the present case, in view of the issues made by the pleadings. The plea of *liberum tenementum* admits possession by the plaintiff, but does it admit such a possession as entitles him to sue in the particular case? The nature of the plea—what it admits, and what it denies—was discussed in *Hunter vs. Hatton*, 4 *Gill*, 125, where we are told that "it must admit such a possession as would suffice to maintain the action, if unanswered, or as against a wrong-doer. On the other hand it must deny a rightful possession, or it would fail as a defence to the action. It gives implied color to the plaintiff, but asserts a freehold in the defendant, with a right to immediate possession." Where, in answer to such a plea, the plaintiff replies a term created by the defendant, the freehold of the latter is admitted, with the assertion of a right of possession in the plaintiff, under the terms. Under that issue the plaintiff's right of possession would be the question to be decided. But where, as here, a special replication is not filed, and the issue is joined on the plea of *liberum tenementum*, the matter in issue is the freehold of the defendant, and if the jury find tl t fact they have nothing to do with the right of possession. he plaintiff's traverse of the plea admits the defendant's right to the possession, should the jury find him entitled to the freehold. This prayer is, therefore, clearly defective in leaving out of view all notice of the freehold title, and placing the plaintiff's right to recover on mere proof of possession,

without reference to its character as an adversary holding against the legal owner.

The second prayer asserts the plaintiff's right to recover on proof of possession in the plaintiff, and those under whom he claims, from 1817 to 1845, "by enclosure, and by the use and cultivation of the property so enclosed," on the ground that such possession barred the defendant's entry.    Without passing upon all the objections urged against this prayer, we think it was properly refused.    Conceding, which we do not decide, that where there is no evidence to explain the character of the entry and possession, the court may instruct the jury—as a conclusion of law—that possession by enclosure for twenty years is sufficient to bar the entry of the owner, without submitting to the jury to find whether it be an adversary holding as against him, we have no doubt that, if there be such evidence, it must be embraced by the prayer, to enable the jury to ascertain the fact of adverse possession, from all the proof in the cause applicable to that question, embracing the intent with which the entry was made, the nature of the possession, and the acts of ownership, conduct and declarations of the party under whom title by possession may be claimed.    *Helms vs. Howard*, 2 *H. & McH.*, 76. *Matthews vs. Ward*, 10 *G. & J.*, 443.  1 *Gill*, 449.  *Adams on Eject.*, 505.    In this case the prayer confines the jury to possession by enclosure and cultivation, without noticing the declarations of Nathan Tyson, under whom the plaintiff claims, made before the sale, and proved by Myers and Nicholson.    Under the instruction the plaintiff would have been entitled to the verdict, although the jury might have believed that Tyson had offered to sell his wife's land demised under Ellicott's will, without including this disputed lot in the sale, and had said that he did not claim it, and could give no title to it.    These were important facts, if found by the jury, because Tyson had been the agent of Ellicott in his life time, in reference to the property which he devised to his daughter, Mrs. Tyson, and had had the possession and management of it since Ellicott's death, and tended to show that neither he nor Ellicott regarded the possession by

---

Keener *vs.* Kauffman.

---

enclosure as of such a character as conferred title to the land, by adversary holding against the owner.

The *third* prayer, reciting substantially the same facts, assumes that they are sufficient to authorize--indeed, to require--the jury to presume a deed to Tyson. For the reasons above stated, this prayer was also properly rejected. If the jury believed that Tyson had no title to the land in 1851, and could give none to his vendee—of which his own admissions were evidence—how could they find that he had a deed from the defendant, or those under whom he claims?

The remaining question relates to the admissibility of that portion of Myer's evidence which was objected to by the defendant. Title to land cannot be shown by parol. The law prescribes other modes of acquiring legal estates. But, although parol admissions are incompetent to prove facts that cannot be lawfully established by parol pro of, (1 *Greenlf Ev.*, 203,) "the declarations of a man respecting his title, made before he parts with his estate, are evidence against him, and all claiming under him." *Dorsey vs. Dorsey*, 3. *H. & J.*, 426. See, also, *Clary vs. Grimes*, 12 *G. & J.*, 31. 1 *Greenlf. Ev.*, sec. 189. 2 *Metcalf*, 363.

In this case the plaintiff relies on title by possession, Tyson being one of the alleged occupants, under whom he claims. The possession, to be effective, must have been adverse to the claims of the owner, which, as far as Tyson was concerned, was without claim of title, if this witness can be relied on. It is clear that the character and extent of the possession may be shown, and no more reliable testimony on the question could have been offered than his declarations as proved by Myers.

*Judgment affirmed.*

(Decided June 29th, 1860.)