## HASCALL *v.* HAFFORD.

*(Jackson.* May 25, 1901.

1. HUSBAND AND WIFE. *Wife's domicile.*

    The husband's domicile determines that of the wife, regardless of the place of her actual residence. (*Post pp. 356, 357.*)

    Case cited: Farris *v.* Sipes, 99 Tenn., 298.

2. SAME. *Exemptions allowed only to widow of resident.*

    Exemptions of homestead, etc., and provision for a years' support made by Constitution or statutes in favor of widows, inure to the benefit of the widows of residents, and not to the widows of nonresidents. (*Post, p.* 357.)

    Cases cited: Graham *v.* Stuhl, 92 Tenn., 673; Farris *v.* Sipes, 99 Tenn., 298.

3. HOMESTEAD. *Nonresident not entitled to.*

    To constitute one a resident of the State, entitling him and his widow to homestead, he must have acquired a domicile in the State in the sense of residing here with intention to remain permanently. It is not sufficient that he has a mere home or habitation in the State, with no intention of immediate removal. (*Post, pp. 359–363.*)

    Case cited: Stratton v. Brigham, 2 Sneed, 421.

4. DOMICILE. *Does not exist, when.*

    Domicile within the meaning of the homestead laws does not exist in favor of a person or his widow, although he had lived in the State for several years, voted in a primary election, and was elected to the office of Alderman, which he declined, when it appears that he had never moved his family into the State, and had repeatedly declared that he had come into the State for temporary business purposes, and expected to return to his former place of residence when his purposes were accomplished. (*Post, pp. 359–363.*)

    Case cited: Devine *v.* Dennis, 1 Shan. Cas., 378.

5. CHANCERY PLEADING AND PRACTICE. *Concurrent finding of Court and Master.*

The rule as to concurrent finding of Chancellor and Master has no application when the concurrence is as to a fact, or, rather, mixed question of law and fact, which should have been determined by the Chancellor without a reference. Hence such concurrent finding as to fact, or question of domicile or residence, will be utterly disregarded. (*Post, pp. 358, 359.*)

---

FROM LAUDERDALE.

---

Appeal from the Chancery Court of Lauderdale County. JOHN S. COOPER, Ch.

SCRUGGS & ROSEBROUGH and W. G. LYNN for Hascall.

WATSON & FITZHUGH, M. M. MARSHALL, THOMAS STEELE, BLAIR PIERSON, C. P. McKINNEY, KIRKPATRICK & TANNER, and J. W. WATKINS for Hafford.

McALISTER, J. The question presented for determination upon this record is, whether Bella Hascall, widow of H. C. Hascall, is entitled to homestead, the exempt property, and to a year's support out of the estate of her deceased husband. The solution of this question involves the further inquiry, whether the said H. C. Hascall, at the time of his death, was a citizen of the State of Tennessee. It is conceded that the said Bella Hascall, at the time

of her husband's death, was a resident of the State of Michigan; but, if the husband was a citizen of the State of Tennessee, this fact, as matter of law, determines the domicile of the wife. *Farris* v. *Sipes*, 15 Pickle, 298. It is settled in this State that the statute providing for a year's support for the widow applies only to the widow of such person as may be residing in Tennessee at the time of his death, and does not apply to the widow of a nonresident. *Graham* v. *Stuhl*, 8 Pickle, 680. So in *Farris* v. *Sipes*, 15 Pickle, 298, it was held that the constitutional provision and statutes exempting homestead inure to the benefit of citizens, and nonresidents are excluded from their operation.

It appears from the record that H. C. Hascall died in Lauderdale County, Tennessee, on November 13, 1899, and, by last will and testament, devised his entire estate, both real and personal, to his wife, Bella Hascall. The testator left surviving him six children, two of whom are minors. The will was duly admitted to probate, and the widow dissented therefrom. Coleman Hafford qualified as administrator, and filed a bill in the Chancery Court for the administration of the estate. The widow claimed the homestead, the exempt property, and a year's support out of the assets of the estate. The administrator resisted the claim of the widow, on the ground that the testator and his wife, at the time of his death, were residents and citizens of the State of Michigan. Mrs. Hascall averred that her husband,

the said H. C. Hascall, was, at the time of his death, a resident citizen of Gates, Tennessee, where he had been engaged in the manufacturing business many years.

Respondent admitted that she resided at Flint, in the State of Michigan, and had remained there, at her husband's request, for the purpose of completing the education of their children ; that from time to time she had contemplated taking up her permanent residence with her husband at Gates, Tenn., but had delayed doing so until the education of their children might be finished. During the progress of the cause, a reference was made to the Master to take proof and report whether or not H. C. Hascall was a citizen of the State of Tennessee at the time of his death, or whether he and his family were citizens of Flint, Michigan, and only temporarily in Lauderdale County, Tennessee. In obedience to this reference, the Master reported that H. C. Hascall was not a citizen of Tennessee at his death, but that he and his family were citizens of Flint, Mich. Exceptions were filed to this report by counsel for the widow, and also by the guardian *ad litem* for the minors, which exceptions were overruled by the Chancellor, and the report confirmed. This action of the Chancellor is assigned as error. On the other hand, it is insisted by counsel for the administrator that this is a concurrent finding by Master and Chancellor on a question of fact, which is conclusive and binding on this Court. This rule of

practice is not applicable in the present instance. The Chancellor, without settling the principles of law for the guidance of the Master, erroneously referred the whole matter for proof and report. It is the duty of the Court to settle issues addressed to him before a reference to the Master is ordered. The question of residence or nonresidence of H. C. Hascall, was a mixed question of law and fact, and was for the determination of the Court upon the proof.

We are not, therefore, concluded by the concurrent finding of Master and Chancellor on this subject, since it was not a proper question to be referred to the Master. So that, disregarding the report of the Master, we proceed to examine the question as an original proposition. It is said, in the first place, that there is a distinction between citizen and resident, and that the latter term was used by this Court in *Graham* v. *Stuhl*. It was held in that case that the statute, providing for a year's support for the widow, applies only to the widow of such person as may be *residing* in Tennessee at the time of his death, and does not apply to the widow of a *nonresident*. But it is very clear that this Court, in the latter case, used the word residence as interchangeable with domicile, and did not intend to draw any distinction between the terms citizen and resident. It is true this distinction has been recognized by this Court in attachment cases. In *Stratton* v. *Brigham*, 2 Sneed,

421, Judge Totten said: "There is, no doubt, a distinction between residence and domicile. Domicile is the habitation fixed in any place with an intention of always staying there. In this sense he who stops, even for a long time in a place for the management of his affairs, has only a habitation there, but no domicile. Thus the envoy of a foreign prince has not his domicile at the court where he resides. This is national domicile, in the sense of the public law, by which the national character of the person and the right of succession to movable property, are determined. But when used in connection with subjects of domestic policy, as taxation, settlement, voting and the attachment law, the word domicile has a more confined and restricted meaning and implies the same as residence; that is, the home or habitation fixed in any place without a present intention of removing therefrom."

It was held that a defendant in an attachment bill who had moved his family and effects to this State from the State of his former abode, hired servants, rented a house for a year, with the privilege of retaining it longer, opened an account at the bank, rented a box at the postoffice, and had undertaken and was engaged in prosecuting a railroad contract, which might occupy two or more years, was held to be a nonresident in the sense of our attachment laws. That was an attachment bill against the defendant as a nonresident. It was held he was a nonresident. See *Southern Railroad Co.*

v. *McDonald*, 59 S. W. R., 370, where the defendant was held to be a nonresident in the sense of our attachment laws, although he claimed to be only temporarily absent from the State.

But this distinction is not applicable to cases of homestead and exemption, but the question in such cases is one of domicile. Mr. Brown, in his Law Dictionary (Rawles' Revision), page 905, defines resident as a person coming into a place with intention to establish his domicile or permanent residence, and who, in consequence, actually remains there. Time is not so essential as the intent, executed by making or beginning an actual establishment, though it be abandoned in a longer or shorter period." Domicile is defined as that "place where a man has his true, fixed, and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." So that, at last, the question is whether the deceased had acquired a domicile in this State; for, in order to be a citizen or resident, the party must have acquired a domicile. To constitute domicile, two things must concur—residence and intention to make it home of party.

It appears from the record that, when the deceased removed to Tennessee, he left his wife and children at their home in Flint, Michigan, where he had always lived. The family remained there until the date of H. C. Hascall's death; but in the meantime, they occasionally visited each other, back and

forth. The object of H. C. Hascall in coming to Tennessee was to avail himself of its timbered lands in executing certain contracts with the Standard Oil Company, to furnish staves and headings. His business associates—those most intimately connected with him during his sojourn in Lauderdale County—testify to repeated declarations by him that his home was in Flint, Michigan, and that he was only temporarily in the State of Tennessee, to make money. It is also shown in proof that, during the last illness of H. C. Hascall, his wife visited him in Tennessee, and expressed her purpose to take him back to Michigan to live in the event he recovered. The principal facts relied on to show that deceased had acquired a domicile in this State are: (1) That he lived here for several years, and (2) that he once voted in a primary election, and (3) that he was once elected alderman of the town of Gates. It should be stated, however, that he refused to accept the office of alderman and declined to serve. But we think the declarations of deceased in respect of his home and his intention to return to it outweigh the fact of voting in a primary or running for office, as indicating the real purpose of the party. It was held in *Divine et al.* v. *Dennis,* 1 Shannon, 378, that facts indicating that a party was a permanent citizen of Tennessee—such as voting in our elections, suing and being sued in our Courts, paying taxes, and renting land, etc—are overcome by his repeated declarations that he was a citizen of Ken-

tucky and of his purpose to return to that State when his government contract was finished," etc.

We are of opinion the Chancellor was correct in holding that H. C. Hascall was, at the time of his death, a nonresident of Tennessee, and that his widow was, therefore, not entitled to homestead, exempt property, or year's support.

Affirmed.