# WILLIAM E. GANTT ET AL. *vs.* RICHARD H. TROTT

*Testimony in Orphans' Court Proceeding—Admissibility of Declarations as to Title by Person in Possession of Land—Inheritance.*

Code, Art. 16, sec. 238, which requires that the testimony of a witness shall be read over to him and signed by him, relates to testimony taken before examiners in equity causes, and has no application to evidence taken in the course of a proceeding in the Orphans' Court.

Upon the death of a man intestate and without issue, who had been in possession of a farm for upwards of forty years, the question arose as to whether the land should descend to his heirs on the side of his father or to his heirs on the side of his mother, under Code, Art. 46. All the record evidence of the title of the deceased to the land had been lost in a fire which destroyed the County Court House. *Held*, that evidence is admissible, although it is hearsay, of statements made by the deceased that he had inherited the farm from his mother, and that consequently, the land descends to the heirs of the deceased *ex parte materna*.

*Decided January 8th, 1908.*

Appeal from the Orphans' Court of Calvert County.

The cause was submitted to the Court on briefs by:

*James W. Owens*, for the appellant.

*John B. Gray*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings up for review by us the distribution made by the Orphans' Court of Calvert County of a net balance of proceeds of sale of a farm owned by Charles F. Gantt in his lifetime and sold after his death for the payment of his debts. The power of the Orphans' Court to direct the sale of the land, which had been appraised at less than $2,500, and the regularity of the sale are both conceded. The only controversy is whether the net fund amounting to $208.12 is to go to the appellants who are the heirs at law of the deceased on his father's side or to the appellee who is his heir at law on his mother's side.

It appears from the record that Charles F. Gantt died in February, 1906, intestate, unmarried and without issue, at the age of about sixty-one years, seized and possessed of a farm of forty acres in Calvert County on which he had resided all of his life. The destruction of the Calvert County Court House by fire in 1882 had obliterated the record evidence, if any such existed, of the source of his title to the farm and he had never attempted to re-establish on the records any evi-

dence of the ownership of his lands, as those persons, whose muniments of title had been destroyed by the fire, were authorized to do by chap. 116 of the Acts of 1886.

The uncontradicted testimony in the record shows that Gantt was the only child of his parents, and that his father died and his mother afterwards married a Mr. Whittington prior to 1876, and that she died shortly thereafter without having had any other children. Samuel Turner aged sixty-one years who had lived adjoining the farm or within a mile of it all of his life, testified that Gantt and his mother had lived on the farm from his early childhood until her death which occurred about thirty years ago and that Gantt had continued to live there until his death in 1906. He also testified that he had often heard the mother say that she had received the farm from her father, Thomas Hunt, and had often heard the son say that the property belonged to his mother and that he got it from her at her death. He further testified that such was the prevalent opinion in the neighborhood as to the nature of Gantt's title to the farm. Substantially the same testimony was given by Charles T. Chaney who had been acquainted with Gantt for forty years prior to his death, and by the appellee, Richard H. Trott, who is the only direct descendant of Thomas Hunt now living. It was also proved that in 1876 the farm was assessed for taxes to Mrs. Whittington and that it had stood in her name on the tax books ever since then.

No attempt was made to contradict this testimony but the portion of it which consisted of proof of statements made to the witnesses by Gantt and his mother as to the character of their title to and possession of the farm were excepted to as being hearsay, and all of it was excepted to because the testimony of the respective witnesses was not read to them before signing in accordance with the requirements of sec. 238 of Art. 16 of the Code of Public General Laws.

Considering these exceptions in their inverse order, it is to be observed that sec. 238 of Art. 16 of the Code relates to

testimony taken before examiners in chancery and has no
relation to proceedings in the Orphans' Court, and therefore
a non-compliance with its provisions formed no proper ground
of exception in the case before us.

Nor do we regard as well taken the exception to the testi-
mony relative to statements made by Gantt and his mother,
while respectively in possession of the farm as to the nature
of their possession and the title by which they held it. The
rule against the admission of hearsay evidence has several
well known exceptions. Declarations by parties in possession
of land, explanatory of the character and extent of their claim
to its ownership have frequently been held to be admissible
after their death to bind those claiming under them. *Keener*
v. *Kauffman*, 16 Md. 307. The rule in such cases is well
stated in *Dodge* v. *Trust Co.*, 93 U. S. 379, where it is said:
"Such declarations are competent to show only the character
of the possession of the person making them and by what
title he holds but not to sustain or destroy the record title."
In *Decker* v. *Decker*, 89 N. W. R. 798, it is stated as follows:
"The rule is that declarations made by a party when in pos-
session of real estate and afterwards deceased are admissible
as competent evidence to show the character of his possession
but not for the purpose of building up or destroying the
record title." In the present case we have no evidence of
any record title at all to the farm but proof of a continuous
possession by the mother and her only son after her, for a
period in all of sixty years. This case may almost be held to
afford an illustration of the proposition announced in *Casey* v.
*Inloes*, 1 Gill, 430, in reference to the proof of an ancient pos-
session and descent of the lands there involved, that hearsay
evidence is admissible to prove facts of great antiquity of which
no written evidence can be presumed to exist. Matters of
pedigree and descent, of which there is often no record evi-
dence, must frequently of necessity be proven by hearsay in
the forms of declarations made, by the deceased persons under
whom the parties claim, at a time when they had no interest
in misrepresenting the facts. *A. & E. Encyc.*, vol. 15, p. 315;
16 *Cyc.*, 1223 *et seq.;* 3 *Elliott on Ev.*, sec. 2195 to 2197.

Where, as in this case, it is shown that the son entered into or remained in possession of the estate of his mother at her death the law intends that he entered claiming as her heir, *Coke, Litt.*, sec. 296, and the estate in his hands must be held to have been acquired by him *ex parte materna*. The order appealed from of the Orphans' Court finally ratifying the auditor's account, which awarded to the appellee the fund in hand as being the proceeds of land which had descended to the intestate *ex parte materna*, must therefore be affirmed.

*Order affirmed with costs.*