FRED C. POISSON ET ALS. v. ELIZABETH M. PETTAWAY ET ALS.

(Filed 3 October, 1912.)

1. Descent and Distribution — Collateral Relations — Wills — Same Estate—Inheritance.

At common law, a devisee who takes the same quality and nature of estate under the will as he would have taken by descent had the testator died intestate. is deemed to take by descent, and under our fourth canon of descent the same construction obtains.

2. Descent and Distribution — Collateral Relations — Inheritance—Blood of the Ancestor.

On failure of lineal descendants, where the inheritance has been transmitted by descent from an ancestor, etc., under the fourth canon of descent, the collateral relations who inherit the estate must be of the blood of the first purchaser, through whatever intermediate devolution by descent, gift. or devise it may have passed. and however remote may be the first ancestor.

APPEAL by defendant from *Carter, J.,* at July Term, 1912, of NEW HANOVER.

Civil action. From a judgment for plaintiffs, the defendants appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*B. G. Empie, Louis J. Poisson for plaintiffs.*
*H. McClammy, E. K. Bryan for defendants.*

BROWN, J.  Jehu Poisson purchased the lot in controversy
and died in 1873, devising it in fee to his daughter Sarah, who
died in 1906, devising it in fee to her brother and only heir at
law, James Dickson Poisson.  He died in 1910, intestate, seized
of the property, never having married, leaving no brother or
sister or issue of such.

The plaintiffs are the nearest collateral relatives of James
D. and Sarah Poisson, of the blood of their father, Jehu Pois-
son.

The defendants are equally related to James Dickson and
Sarah through their mother, the wife of Jehu Poisson, but are
not of the blood of the latter.

The fourth canon of descents reads as follows:  "On failure
of lineal descendants, and where the inheritance has been trans-
mitted by descent from an ancestor, or has been derived by
gift, devise, or settlement from an ancestor, to whom the person
thus advanced would in the event of such ancestor's death have
been the heir or one of the heirs, the inheritance shall descend
to the next collateral relations, capable of inheriting, of the
person last seized, who were of the blood of such ancestor, sub-
ject to the two preceding rules."

At common law, a devisee who takes the same quality and
nature of estate under the will as he would have taken by
descent had the testator died intestate, takes by descent, owing
to the preference of the common law for the title of descent.
Our statute puts a similar devise between such parties on the
same footing with the descent.

The only question presented for our consideration is as to
whether the heirs at law of James Dickson Poisson must be of
the blood of Jehu Poisson, or whether only of the blood of
Sarah.

The counsel for the defendant contends that the clause in the
canon of descents looks only to the proximate and immediate
descent; the counsel for the plaintiff, that it looks to the origin
of the title in the first purchaser, and requires that the party

claiming as heir should be of the blood of the first purchaser, through whatever intermediate devolutions by descent, gift, or devise it may have passed, and however remote may be the first ancestor.

Ever since 1842 we think that it has been settled substantially that when an estate goes to a person through a series of descents or settlements, and that person dies without issue, it results back to those of his collateral relations who would be heirs of the ancestor from whom it originally descended, or by whom it was originally settled. *Wilkerson v. Bracken,* 24 N. C., 315.

The question is very fully discussed in that case by *Chief Justice Ruffin,* who says: "Although our attention has not been particularly directed to this point in any previous case, yet it has not been entirely unperceived. The general impression made, at least to my mind, from reading the act, without any special reference to this question, cannot fail to be seen in the opinion delivered in *Burgwyn v. Devereux,* 1 Ired., 583. I take it for granted that an inheritance which has descended, no matter when—and I might have added no matter from whom or from how many—shall descend to the blood of the ancestor from whom it did descend; which, of course, includes the ancestor from whom it first descended."

This seems to have been the impression made on *Judge Henderson's* mind, as plainly expressed, if not fully decided, in *Bell v. Dozier,* 12 N. C., 333.

In a note to the case of *Wilkerson v. Bracken, supra,* is given the report of Judge Gaston from the committee of the House of Commons, 8 December, 1808, reporting the fourth canon of descent as above quoted. In it Judge Gaston says: "The fourth rule has for its principal object the securing to the family of the man by whose industry the property was acquired the enjoyment of such property in preference to those who have no consanguinity with him."

It is true that this identical question was passed upon by the Supreme Court of the United States in *Gardner v. Collins,* 27 U. S., 58, construing a statute of Rhode Island similar to ours. In that case a very elaborate and interesting opinion

was delivered by *Mr. Justice Storey* and a conclusion reached that the words of the canon meant an immediate descent, gift, or devise, and make the immediate ancestor, donor, or devisor sole stock of descent.

A different rule, as we have shown, has prevailed, and now prevails in this State.

· The judgment of the Superior Court is
Affirmed.