HUGHETT v. HUGHETT et al.—196 S. W. (2d) 720.

Eastern Section.  July 31, 1946.

Petition for Certiorari denied by Supreme Court, October 5, 1946.

William York, of Huntsville, for appellant.

Howard Baker, of Huntsville, for appellee.

BURNETT, J. Maggie Hughett widow of R. L. Hughett brought this suit against two brothers of her deceased husband to have the title and rights of the parties fixed to two tracts of land in Scott County, Tennessee.

The Chancellor found that Maggie Hughett was entitled to homestead in both tracts which combined were not worth in excess of $1000. He also found that she owned a one half interest in one tract by purchase and to a three-fifths interest in the other tract by purchase. He found that John Hughett is owner of a one half interest in the first tract and two-fifths interest in the second tract by purchase and inheritance subject to the homestead rights of Maggie Hughett.

The Chancellor further found that Maggie Hughett had sold $68 worth of standing timber from the land and had removed a dwelling house of the value of $200 from the first tract. He therefore rendered judgment against her for one half these amounts or $134. Both parties have appealed and assigned error.

The pertinent facts are: Maggie Hughett and R. L. Hughett were married at her home in the State of Kentucky in 1912. They lived there for a short time when they moved to Tennessee and lived on the land in question for many years. Shortly before the death of R. L Hughett, in 1930, they moved to Knoxville, Tennessee, where R. L. Hughett was employed as a deputy U. S.

Marshal. While in the line of duty he was shot and died from the gun shot a few days thereafter. After the death of her husband Maggie Hughett continued to live in Knoxville for nearly a year when due to the sickness of her mother she returned to Kentucky and cared for her mother for about a year when the mother died. After the death of her mother she remained in Kentucky and cared for her father until his death in 1937. Meantime she purchased land and a home in Kentucky. She returned to Tennessee in 1938 or as soon as a lease on the land in question had expired—she has lived here since. From the death of her husband until shortly before the institution of this suit she had rented the land from year to year. She paid all taxes on the land up to the time of this suit. Her homestead was never assigned to her. No question or opposition was ever voiced by her husband's relatives to her use of the land. She and R. L. Hughett had no children. Shortly before the institution of this suit John Hughett took possession of a portion of the land.

The proof, without contradiction, shows that Maggie Hughett went to Kentucky after the death of her husband to care for her mother and father with the avowed intention of returning to Tennessee when she could leave them. It is true while there she bought real estate, a home, and voted in at least one election. All this time though she says it was her intention to return to Tennessee when she could leave her parents. This intention was expressed to others during the time she was residing in Kentucky.

Both tracts of land originally belonged to Amanda Hughett the mother of R. L. Hughett. Amanda Hughett died intestate leaving as her surviving heirs five children. These children by mutual partition divided her land. Tract No. 1 herein was allotted to R. L. Hughett, de-

ceased husband of Maggie Hughett. Will Hughett, a brother of R. L. Hughett, was allotted tract No. 2 herein. He in turn conveyed it to R. L. Hughett. The surviving husband of Amanda Hughett remarried and had one child by this second marriage.

R. L. Hughett died intestate leaving his widow Maggie Hughett, two brothers, two sisters and one half sister. After the death of R. L. Hughett his two sisters and half sister conveyed their interest in the lands to Maggie Hughett. Will Hughett, a brother of R. L. Hughett, conveyed his interest in the lands to John Hughett, the other brother of R. L. Hughett and the appellant herein.

The full value of both tracts of land does not exceed $1000.

Admittedly Maggie Hughett sold $68.00 worth of standing timber from the land after her husband's death. It is likewise admitted that she removed a small two room house from the land to other land she owned. The evidence is conflicting as to the value of this house. The Chancellor found it was worth $200. There is ample credible proof to support this finding—we concur therein.

Under this state of facts and findings John Hughett has appealed and says the Chancellor was in error in granting Maggie Hughett homestead because she had abandoned it.

■■ Obviously the basis of this contention is the living in the State of Kentucky for over seven years, the purchase of property there and voting there by Maggie Hughett after the death of her husband. The question presented is a mixed question of law and fact.

The fact that she purchased property, voted and lived in Kentucky for the long period by itself is strong evidence that she had established a domicile or permanent residence there. But we must take these facts in the light

of the uncontradicted proof herein that it was never her intention to establish a domicile or permanent residence there—she was merely there looking after her parents.

We think the case of Hascall v. Hafford, 107 Tenn. 355, 65 S. W. 423, 425, 89 Am. St. Rep. 952, settles the question. In this case it was held that the widow of Hascall was not entitled to claim homestead here because her deceased husband had not acquired a domicile here with the intention of residing here permanently—a mere home or habitation in this state is not sufficient. The Court said:

"It appears from the record that when the deceased removed to Tennessee he left his wife and children at their home in Flint, Mich., where he had always lived. The family remained there until the date of H. C. Hascall's death, but in the meantime, they occasionally visited each other back and forth. The object of H. C. Hascall in coming to Tennessee was to avail himself of its timbered lands, in executing certain contracts with the Standard Oil Company to furnish staves and headings. His business associates—those most intimately connected with him during his sojourn in Lauderdale county—testify to repeated declarations by him that his home was in Flint, Mich., and that he was only temporarily in the state of Tennessee to make money. It is also shown in proof that during the last illness of H. C. Hascall his wife visited him in Tennessee, and expressed her purpose to take him back to Michigan to live in the event he recovered. The principal facts relied on to show that deceased had acquired a domicile in this state are: First, that he lived here for several years; and, second, that he once voted in a primary election; and, third, that he was once elected alderman of the town of Gates. It should be stated, however, that he refused to accept the office of alderman, and declined to serve. But we think the decla-

rations of deceased in respect of his home and his intention to return to it outweigh the fact of voting in a' primary or running for an office, as indicating the real purpose of the party. It was held in Divine, et al., v. Dennis, 1 Shannon, 378, that facts indicating that a party was a permanent citizen of Tennessee, such as voting in our elections, suing and being sued in our courts, paying taxes and renting land, etc., are overcome by his repeated declarations that he was a citizen of Kentucky, and of his purpose to return to that state when his government contract was finished, etc.''

The above quoted facts make out just as strong if not a stronger case that Hascall was a permanent resident of Tennessee than do the facts of the instant case that Maggie Hughett was a permanent resident of Kentucky.

The question is one of domicile. The court in the Hascall case, supra, quotes and adopts the following as the correct definition of domicile ''As 'that place where a man has his true, fixed, and permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.' ''

It is very earnestly argued that since Maggie Hughett voted and otherwise exercised the rights of franchise in Kentucky that this of itself is conclusive of her domicile there.

''The fact that one votes or registers in a certain place does not necessarily prove that his residence or domicile for other purposes is in that place—such fact is not conclusive evidence of domicile.'' 107 A. L. R. 451.

The case of Hale v. Sandusky, 181 Tenn. 26, 178 S. W. (2d) 386, is not in point. In the Hale case the surviving widow married a resident of Alabama and moved there with her husband—''clearly establishing her domicile in Alabama.''

Maggie Hughett complains of the decree in two particulars, to-wit:

(1) That the allowance for the house she removed was too much because it was not worth the amount found by the Chancellor and she had spent her own money repairing it after the death of her husband.

(2) That instead of fixing her liability of one half value of the timber and house she had removed it should have been fixed at two-fifths.

As heretofore said we concur with the finding of the Chancellor as to the value placed on the house. It is true Maggie Hughett placed a very much smaller value thereon but we feel that the burden of the proof and better reasoning supports the finding of the Chancellor.

The second contention above mentioned is based on which is applicable herein subsection two (2) or subsection three (3) of Code section 8380. The applicable portions of this section are:

"The land of an intestate owner shall be inherited in the following manner by his lineal descendants, collateral kindred; or ascendants: . . .

"(2) If the estate was acquired by the intestate, and he died without issue, his land shall be inherited—

"(a) . . . By his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided amongst them equally. . . .

"(3) Where the land came to the intestate by gift, devise, or descent from a parent, or the ancestor of a parent, and he die without issue—

"(a) . . . If he have brothers or sisters of the paternal line of the half blood, and brothers or sisters of the material line also of the half blood, then the land shall be inherited by such brothers and sisters on the part of the parent from whom the estate came, in the same man-

ner as by brothers and sisters of the whole blood, until the line of such parent is exhausted of the half blood, to the exclusion of the other line.''

The mother of R. L. Hughett died intestate leaving a boundary of land. She had five children. These five children divided this land between them and executed a deed to each for his share. R. L. Hughett was deeded tract No. 1 herein—there was no consideration passing from one to the other to equalize their moieties. We think this tract was not ''acquired'' by R. L. Hughett in the sense the word ''acquired'' is used in the statute but came to him by ''gift, devise, or descent.''

The following language of Presiding Judge Anderson in Roney v. Dyer, 25 Tenn. App. 545, 161 S. W. (2d) 640, 642, is particularly applicable:

''It is an invariable common law rule, that, when an intestate leaves an estate which he acquired by gift, devise or descent from some of his ancestors, and he has no descendants, the estate can be inherited only by persons of ancestral blood. Gantt v. Trott, 107 Md. 325, 68 A. 612; Poisson v. Pettaway, 159 N. C. 650, 75 S. E. 930; Note: 12 Am. St. Rep. 109.

''An ancestral estate arises where there is no consideration other than blood. If the estate is obtained by any means other than descent, gift or gratuitous devise, then it is a new acquisition and its course of descent is not governed by the common law rule, nor by a statute based thereon.

''It is very generally held that a true partition among tenants in common of real property which they hold as an ancestral estate—that is, where it came to them by devise, or gift, of an ancestor—does not affect the ancestral character of the tract taken by each. This is held to be true whether the partition is made in a legal pro-

ceeding or by deeds of mutual release. Carter v. Day, 59 Ohio St. 96, 51 N. E. 967, 69 Am. St. Rep. 757; other cases are collected in the notes appearing in 103 A. L. R. 231, 39 L. R. A., N. S., 955, L. R. A. 1916C, 912, Ann. Cas. 1913E, 1263.

"The rationale of this view is that by such a transaction no new estate is acquired and no change in the title occurs. Each of the parties takes his allotment not by purchase but is seized of it as much by descent from the common ancestor as he was by the undivided share before the partition. Cottrell v. Griffiths, 108 Tenn. 191, 65 S. W. 397, 57 L. R. A. 332, 91 Am. St. Rep. 748."

It thus appears that the deed of R. L. Hughett's half sister to Maggie Hughett in tract No. 1 herein is of no effect. She therefore only owns a one-half undivided interest in this tract since R. L Hughett left four full brothers and sisters. Maggie Hughett has a deed from the two sisters. John Hughett, a brother, has a deed conveying to him the other brother's share.

We assume, since no mention is made to the contrary, that the timber and house that were removed came from tract No. 1.

All assignments are accordingly overruled and the cause will be remanded to the Chancery Court for sale in accord with the decree.

The costs will be taxed to both parties to be paid by them equally.