GEORGE F. ROLLINS ET AL. v. ATLANTIC CITY RAILROAD COMPANY.

Argued June 9, 1905—Decided November 13, 1905.

1. A recital of pedigree contained in an ancient deed is of itself evidence of the matter recited if the deed was made by one related to a branch of the family which the pedigree concerns.

2. Such a recital is evidential, although the deed was not made by one related to the family, if it is supported by a long possession consistent with the fact recited, or supported by the fact that no persons have claimed title adversely to such recital and by the fact that the ancient deed has been on record for a long time and grants have been repeatedly made by its grantee and successors in title without question.

3. The trial justice committed no error in overruling a question put to a witness inquiring whether a certain deed had been made to a third person, which deed if made would have put the title to the property injured by a fire out of the plaintiff.

4. The date when a fire occurred having been laid under a *videlicet*, there was no error in permitting it to be proved to have happened upon another date.

5. It having been proved that the plaintiff's goods were fired by defendant's engine, and admitted by defendant that it was unable to prove that it had used all practicable means to prevent the escape of sparks from its engine, the question whether the fire was first ignited on or outside of the defendant's right of way became unimportant.

On rule to show cause why verdict should not be set aside and new trial granted.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, PITNEY and REED.

For the plaintiffs, *Collins & Corbin.*

For the defendant, *Thompson & Cole.*

The opinion of the court was delivered by

REED, J. This is an action brought by the plaintiffs, as heirs-at-law of Daniel Rollins, against the Atlantic City Railroad Company, to recover damages for the loss of timber claimed to have been burned through the negligent conduct of the defendant's servants.

The first reason assigned upon the argument was that the plaintiffs failed to show title to the property injured.

There was no proof of actual possession by the plaintiffs, but they relied upon a title derived from the proprietors. This title was regularly traced to Charles Schumacher, George Ashbridge, Morris Robeson, John Paul and Joseph Paul, who held undivided interests in the property. All these except Ashbridge conveyed their interests to Joseph Ball and Samuel Richards.

It is claimed that Samuel Richards got the interest of Ashbridge through a deed executed to him in 1820 by one John S. Condit and Mary, his wife. This deed contained the following recital respecting the pedigree of Mary, the wife: "She being the issue and heir-at-law of George Ashbridge."

It is insisted on the part of the defendant that this recital is not evidence of the fact thus recited, and thus there is no evidence that George Ashbridge's interest ever passed to Samuel Richards.

The interest which Joseph Ball held in common with Richards is claimed by the plaintiffs to have passed to Richards by a deed executed May 1st, 1822, by one Sarah Hastings. The evidence of her kinship to Ball rests upon a recital in that deed. The deed recites that she, Sarah Hastings, is a widow, and that she was formerly Sarah Richards and the

sister of Mary Ball, who was the mother of Joseph Ball, deceased.

It is insisted on the part of the defendant that this recital is not competent evidence that Sarah Hastings was entitled to Joseph Ball's interest in the property.

If these contentions on the part of the defendant are true, then neither the interests of Ashbridge nor of Ball are proved to have passed to Daniel Rollins, whose heirs are suing. Although the plaintiffs held the other undivided interests in the property, yet the entire loss occasioned by the fire having been assessed in favor of the plaintiffs, the verdict is obviously irregular.

The rule best sustained by the authorities, says Mr. Freeman, is that although the form of action be such that all the co-tenants should have joined, yet if the action be for the conversion of or injury to the common property, and if one sues alone, and the defendant, instead of pleading the non-jointure in abatement pleads to the action, the plaintiff will recover for his share of the damages. *Freem. Co-ten. & P.,* § 353.

Respecting torts to chattels, Mr. Chitty observes that if one of the several part owners sue alone, and the defendant do not plead in abatement, the other part owners may afterward sue alone for the injury to their individual share, and the defendant cannot plead in abatement to such action. In the same connection he states the rule to be that if a party plaintiff in an action *ex delicto* be omitted, the objection can only be taken by plea in abatement or by way of apportionment of the damages on the trial. 1 *Chit. Pl., marg. p.* 66.

So it was said, in *Wheelwright* v. *DePeyster,* 1 *John.* 470, that defendants may give the joint interests of others in evidence in mitigation of damages. In *Call* v. *Buttrick,* 4 *Cush.* 345, which was an action for a nuisance to a well, Judge Metcalf remarked: "If it were certain that the plaintiff is tenant in common of the well, the non-jointure of his co-tenant could be excepted to only by plea in abate-

ment, though he would be entitled to recover damages only *pro interesse suo."*

*Putney* v. *Lapham,* 10 *Cush.* 232, was an action of trespass on the case for an injury to the reversion brought by one of two reversioners. The rule annunciated in the preceding case was reiterated.

The case of *Hasbrouck* v. *Winkler,* 19 *Vroom.* 431, cited for the plaintiff, is not in point. The husband was in the actual possession of the chattels destroyed, in which chattels his wife had a part interest. In the present case the plaintiffs were not in actual possession of the injured property, and unless they had a constructive possession of the Ashbridge and Paul interests there was no foundation for the assessment of damages for such injury as resulted to those interests. *Schenck et al.* v. *Cutlrell,* 1 *Zab.* 1.

The question, therefore, confronts us whether it was proved that the title to those interests was lodged in the plaintiffs.

There is no question raised respecting the authenticity of the ancient deeds in which the recitals occur. The only question is whether, regarding them as such, the recitals of pedigree therein are evidential against the defendant.

It was held, in *Fuller* ads. *Saxton, Spenc.* 61, 65, that the recital in an ancient deed or will of any antecedent deed or document, consistent with its own provisions, will, after the lapse of a long period, be presumptive proof of the former existence of such a deed or document, and especially where no deed, declaration, act or claim is shown to rebut such presumption. The ancient will in that case referred to a previous deed for the division of property, and it was held that this reference might raise the inference that the testator had got an estate of severalty in the property by this deed. The plaintiff derived his title from a survey and return under a warrant from the council of proprietors, and the defendant rested his title upon an independent and subsequent survey.

In *Havens* v. *Seashore Land Co.,* 2 *Dick. Ch. Rep.* 365, a recital in an ancient deed made by one Joseph Lawrence

as follows: "Which I bought of John Curtis, which was left to him by his father, David Curtis, deceased, which he bought of Elisha Lawrence, deed bearing date July 9th, 1770," was held to be competent evidence to show that John Curtis had made a deed to Joseph Lawrence for the land conveyed to Lawrence. This was a partition suit and the opposite party was a stranger to this title.

These cases, as is perceived, do not deal with recitals of pedigree, but only with recitals of muniments of title. The query is whether recitals of pedigree stand upon the same footing as testimony, as recitals of muniment of title.

That pedigree may be proved by hearsay testimony is settled. Such testimony is admitted because of the great difficulty—often impossibility—of proving the fact or degree of kinship between alleged relatives, the subject of inquiry being frequently of an ancient date. Respecting what facts come within the meaning of the word "pedigree," and by whom the declaration reproduced as hearsay must have been made, there was some divergence of opinion in the earlier cases. But it seems to be now settled that a declaration, to be admissible, must not only have been made by a person since deceased, and must have been made *ante litam motem,* but must also have been made by a person related by blood or affinity with some branch of the family the pedigree respecting which is in question.

In the words of Mr. Phillipps, "Some relationship of the declarant to some branch of the family must be shown *aliunde* the declaration itself." *Phil. Ev., marg. p.* 276.

This requirement has been held to appertain not only to recitals made verbally, but also to recitals in ancient deeds and wills.

Thus says Mr. Phillipps: "Recitals in deeds, which are not family documents, are receivable if it be shown that the deeds were executed by some member of the family to which the statements have reference." And he proceeds to say that in two modern cases in chancery it has been considered that recitals in deeds were not evidence of pedigree against per-

sons who were strangers to the deed, citing *Fort v. Clarke,* 1 *Russ.* 604, and *Slaney* v. *Wade,* 1 *Myl. & C.* 338.

Mr. Taylor's language is this: "Recitals of descent and description of parties in deeds or other family instruments will be received provided the deeds come from the proper custody and are proved, or may from age be presumed to have been executed by some member of the family to which the statement refers; but the execution by a relative is an indispensable requisite." *Tayl. Ev.* 651.

In the case of *Fulkerson et al.* v. *Holmes et al.,* 117 *U. S.* 389, a deed sixty years old was produced from the custody of the heirs of the grantee. In it was a recital that the grantor was the only child and heir of the patentee of the lands in controversy. Mr. Justice Woods, after observing that the deed was admissible in evidence as an ancient deed, proceeded to discuss the question whether the recital was admissible against the defendant, who did not claim under the deed.

He proceeded to say: "The rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question, may be given in evidence in matters of pedigree. A qualification of the rule is that before the declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself." *Monkton* v. *Attorney-General,* 2 *Russ. & M.* 156; *Attorney-General* v. *Kohler,* 9 *H. of L. Cas.* 660; *Rex* v. *All Saints,* 7 *B. & C.* 789.

"But it is evident that slight proof of relationship will be required, since the relationship of the family might be as difficult to prove as the very fact in controversy."

An examination of the cases demonstrates, however, that evidence that the defendant is of kin by consanguinity or affinity with some branch of the family to which the pedigree relates is not required in all cases to make the recital of pedigree evidential.

Where the recital stands alone it is undoubtedly essential to its competency that it shall be the statement of a de-

ceased kinsman. But there may be other facts which support the credibility of the fact recited, and which, together with the recital, will be sufficient to prove the fact recited.

In the case of Fulkerson et al. v. Holmes et al., just mentioned, the facts relied on to support the recital were these— *first*, that the name of the declarant was Samuel C. Young, and the name of the person who by his recital conveyed the property in question to one Holmes was Samuel Young; *second*, that the patent to Samuel Young was found among his papers after his death; *third*, that Samuel C. Young, as grantee, claimed title for sixty years, which never, so far as appeared, had been questioned or challenged by any person claiming under Samuel Young.

In that case the title came through a patent made in 1787 from the commonwealth of Virginia to one Samuel Young. The next deed, executed in 1819, was by a person named Samuel C. Young to Holmes, from whom the title was regularly traced. The question was how Samuel C. Young got title from Samuel Young.

The deed from Samuel C. Young to Holmes contained a recital of a grant by the Commonwealth of Virginia to Samuel Young, and a recital that Samuel Young, the patentee, had died intestate, and that Samuel C. Young was his only child and heir, and that the title to the land had vested in him.

The only fact to show relationship was the similarity of the names, Samuel Young and Samuel C. Young.

The other two facts were possession of the patent by Samuel C. Young and the possession of the property consistent with his grant.

In his opinion in *Fulkerson et al.* v. *Holmes et al., supra,* Mr. Justice Woods said that the conclusion holding that this recital was proof of the fact that Samuel C. Young was the son and heir of Samuel Young was sustained by the case of *Deery, Lessee,* v. *Cray,* 5 *Wall.* 795, which, he said, was directly in point.

In *Deery, Lessee,* v. *Cray, supra,* title to land was shown to have been in one William Brent. The next step in trac-

ing title from him was a deed purporting to have been executed by the executors of one Samuel Shaw, from whom the title was derived. This last deed recited that William Brent, Sr., deceased, by his will, constituted the grantors his executors, and authorized them to sell the land in question; and that William Brent, who united in the conveyance as executor, was also heir-at-law of William Brent, Sr. The evidence, aside from this recital, consisted in acts of possession by the grantees under a deed of William Brent as heir and as co-executor.

Mr. Justice Miller remarked: "Not a single circumstance is to be found inconsistent with the fact that William Brent, one of the grantees in the deed, was the son and heir of William Brent, Sr.; * * * that recitals of this kind in an ancient deed may be proof as against persons who are not parties to the deed, and who claim a right under it, is too well-settled to admit now of controversy. Such is the doctrine of this court in *Carver* v. *Jackson, 4 Pet.* 1, and in *Crane* v. *Morris, 6 Id.* 598; *Stokes* v. *Dawes, 4 Mas.* 268; *Garwood* v. *Dennis, 4 Binn.* 314."

Now, it is clear that in the mind of Mr. Justice Miller the same kind of testimony that would support a recital of an ancient muniment of title would sustain a recital of pedigree. This appears not only from the facts of the decided case, but also from the character of the cases cited in support of his conclusion.

*Stokes* v. *Dawes, supra,* so cited, was tried before Mr. Justice Story. It involved the question whether the person from whom title was derived was the son of Rebecca Stokes. A deed was offered, executed in 1765, by this person, which deed purported to convey all the interest of his grandfather, Benjamin Stokes, and of his mother, Rebecca Stokes.

It was proved that one of the grantees under this deed had taken and held possession until 1786, and then by his will devised it, from which devise title was regularly traced. Justice Story held that after a possession of thirty years the fact of heirship stated in the deed was a presumptive fact, and left the question of heirship to the jury.

The other three cases cited by Mr. Justice Miller did not involve the question of pedigree at all. *Garwood* v. *Dennis, supra,* contained a recital in an ancient deed of the existence of another deed, and it was held that possession was held presumptively under the recited deed, and that the recital was evidence of the existence of the deed so recited.

Cawes v. Jackson and Crane v. Morris, cases concerning the same title, involved the recital of the execution of a lease contained in a deed of release. Mr. Justice Story, in the first case, remarked that if the transaction be an ancient one, and that if the possession had been long held under such release and is not otherwise to be accounted for, the recital then of itself, under such circumstances, materially fortified the presumption from lapse of time and length of possession of the original existence of the lease.

In line with these cases is that of *McKinnon et al.* v. *Bliss,* decided by the Court of Appeals of New York, and reported in 21 *N. Y.* 206. In that case the will of Sir William Johnson recited that George III. had given the testator a patent for a tract of land which Sir William devised, under which devise the plaintiff claimed title. The New York court held that as there was no proof of long and undisputed possession in accordance with the title claimed, the recital was not evidence.

The cases of *Doe* v. *Phelps,* 9 *Johns.* 169 ; *Jackson* v. *Lamb,* 7 *Cow.* 431, and *Jackson* v. *Lunn,* 3 *Johns. Cas.* 109, were considered, and it was pointed out that in each of these cases there was evidence of long and undisturbed possession consistent with recited muniment of title.

Respecting the question whether this kind of evidence will support a recital of pedigree, the observations of the Master of the Rolls, in *Fort* v. *Clarke,* 1 *Russ.* 601, is significant. The bill in that case was filed for specific performance. The title which the purchaser was to take rested upon a recital of pedigree. The recital not having been proved to have been made by a relative, the bill was dismissed. In doing so, however, the Master of the Rolls remarked that "if evidence of possession had followed and accompanied the re-

cited pedigree, the aspect of the case would have been different."

In *Little* v. *Palister,* 4 *Greenl.* (*Me.*) 209, it was held that recitals in ancient deeds are good presumptive evidence of pedigree where no adverse title by inheritance has been set up under the same ancestor, even although the land conveyed by the deeds be the subject of the controversy. This statement was adopted in *Bowser* v. *Cravener,* 56 *Pa. St.* 132.

The case of *Jackson* v. *Russell,* 4 *Wend.* 546; affirmed, 22 *Id.* 277, is illustrative of the point that a recital of pedigree may be supported by evidence other than that of the kinship of the declarant.

In that case there was testimony, aside from the recital, supporting the pedigree, as well as evidence of possession; but there was no testimony showing that the person who made the recital was of kin to any branch of the family the pedigree of which was in question.

The rule, I think, may be regarded as settled that a recital, whether of an ancient deed, will, lease or pedigree, may be supported by any testimony which renders credible the truth of the fact recited.

The remaining query is whether there is any evidence to support the recitals in the deeds now in question. There has been no actual possession by the grantees of the property conveyed by Condit and wife and Sarah Hastings, because the property was not of a character which called for the exercise of possessory acts.

The deeds, however, in which the recitals occur have been on record for eighty years. For eighty years, as far as appears, no other persons claiming the interests of Ashbridge and Joseph Ball have set up any rights in this property. There seems to have been conveyances made repeatedly by the grantees purporting to convey these interests. Under these conditions, I think the recitals are evidence of the facts recited.

I also think that in the absence of anything to contradict these facts, directly or inferentially, any number of verdicts

against the probative force of these recitals would be set aside, and therefore the trial justice was warranted in saying to the jury that the plaintiffs had proved title.

It is also insisted that the trial justice erred in overruling the question put to a witness called by the defendant. The witness was Mr. McGrath and the inquiry of him was whether there was a deed standing in the name of Mrs. McGrath for the *locus in quo,* which deed was not recorded.

Mrs. McGrath had at one time been the holder of a legal title to the property and she had conveyed to Hood, who conveyed to Daniel Rollins. Rollins had executed a declaration of trust, stating that the property was in law and equity, except as to record title, the property of Mrs. McGrath; and stating, further, that it was to be conveyed to her upon her paying to Rollins $2,500, with interest.

This is what occurred at the trial: The question being propounded to Mr. McGrath, who was called by the defendant, "if he knew whether or not there was such a deed?" he replied, "I do." This was followed by the question, "Is there?" This question was objected to on the ground that the only way to prove the contents of a deed was by the deed, and the way to get it was by subpœna *duces tecum.* The counsel for the defendant replied, "I do not know whether there is anything of that sort or not."

The court remarked, "The only way to prove the existence of a deed is by the production of the deed," to which the counsel for the defendant replied, "My idea about this is that I am not bound to the line of examination that I would be with an ordinary witness."

The question propounded was asked for one of two purposes—either to discover whether a paper existed purporting to be a deed to Mrs. McGrath or to show title to Mrs. McGrath by parol.

For the second purpose the question was, of course, improper. Nor can it be said that the judge was bound to permit the question for the former purpose. The deed, if made, was not made to the witness. The question was merely for the purpose of discovering whether other evi-

dence existed, and where it could be found. The question was not asked to explain why certain testimony which the defendant would be expected to produce was not produced. It seems to have been designed merely to put the defendant upon the track of evidence, which, if discovered, might thereafter be produced. Besides, the answer to the question, as put, might have led the jury to misconceive the purport of the answer, and to think that the existence of such a deed was equivalent to proof of transfer of title.

I think under the conditions there was no injurious error in the ruling of the judge.

Another reason assigned is that the legal title, if proved in anyone, was in the eldest son of Daniel Rollins. The answer to this reason is that there is nothing to show that Daniel Rollins ever had a son, and the stipulation entered into by counsel contains the admission that the plaintiffs are the heirs of Daniel Rollins.

It is assigned as another reason that inasmuch as the declaration lays the date of the fire as April 1st, it follows that testimony that the fire in question occurred on April 29th was erroneously admitted, over an objection.

The date was laid under a *videlicet,* and the defendant was not required to prove that the fire occurred on the precise date alleged.

If, as insisted, this rule works harshly if enforced in actions of this kind, the court could relieve against the harshness only by a continuance of the cause in case of manifest surprise arising from the variance in dates. There was, however, no surprise in this instance, for the cause had been already once tried, and on the former trial the 29th of April was fixed by the witnesses as the date when the fire occurred.

It is further insisted that it was injurious error for the judge to say to the jury that they might assume that the tracks of the defendant were in the middle of the right of way. This observation, we think, was of no material import, for, as the case shaped itself on the trial, it became of no account where the tracks were laid.

The negligence of the defendant was alleged to have been either in leaving its right of way encumbered with combustible materials, which, being first ignited, were the means of spreading the flames to the plaintiffs' property, or in a defective construction or management of the defendant's engines. In either case the jury must have found that the fire was communicated to the plaintiffs' property directly or indirectly from its engines. Upon proof of that fact a liability was imposed upon the defendant, unless it used all practicable means to prevent the communication of fire from its locomotive engines to the plaintiffs' property. This duty included care in the construction and use of its engines, and includes other means within its control by which fire from the engines might be communicated. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 10 *Vroom* 299.

It having been proved, as it must have been, that the fire was communicated from the engines, the company was liable for its consequences, unless it appeared that they had used all practicable means to prevent such communication. *Wiley* v. *West Jersey Railroad Co.,* 15 *Vroom* 247.

If the fire began outside of the company's right of way, the company was bound to show a properly equipped and managed engine. If it began inside its right of way, it was equally bound to show a properly constructed and managed engine. It is true, of course, that for a fire kindled inside its right of way it might have been liable, although its engine was perfect in construction and management, but as a properly equipped and managed engine was one of the practical means for preventing the communication of fire to combustible matter, it was incumbent upon the defendant to show such equipment and management, and a failure to show this left a *prima facie* case arising from proof of communication of fire from the engine unanswered, whether the fire originated inside or outside of the right of way.

Now, it was not shown on the trial whether the engine hauling the cinder train from which the fire had its origin was equipped with all practical means to prevent the escape of fire. The engine was not identified, and the court, with-

out objection, charged that upon that subject the defendant had relieved the jury of difficulty, for that, in the argument of the counsel for the defendant, he admitted that they had not been able to prove that they used all practical means to prevent the escape of sparks from the locomotive.

In this posture of affairs we think it became immaterial whether the fire originated inside upon or outside the defendant's right of way.

I am also of opinion that there is no ground for a new trial disclosed by the alleged newly-discovered evidence, nor do I think the damages were such as to warrant a new trial.

The rule is discharged.