HOMEWOOD REALTY CORPORATION *v.* SAFE DEPOSIT & TRUST COMPANY ET AL.

ANNIE J. GITH *v.* SAFE DEPOSIT & TRUST COMPANY ET AL.

[Nos. 3, 4, January Term, 1931.]

460

*Decided March 19th, 1931.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*C. Alex. Fairbank,* for the Homewood Realty Company, appellant.

*Michael J. Manley,* with whom were *Harley, Wheltle & Webster,* on the brief, for Annie J. Gith, appellant.

*Charles McH. Howard* and *J. Morfit Mullen,* for the appellees.

PARKE, J., delivered the opinion of the Court.

The Safe Deposit & Trust Company of Baltimore and James Morfit Mullen, trustees under the will of Rebecca

L. King, began a suit in equity against the Homewood Realty Corporation, the Eutaw Savings Bank of Baltmiore, and Annie J. Gith, for the purpose of removing a cloud upon the title of their land that was cast by the assertion of the defendants that their adjacent land enjoyed certain easements of air and light and of opening and closing shutters over the land of the plaintiffs. Two of the defendants demurred, and the appeal is from the decree overruling these demurrers. It is unnecessary to narrate all the facts alleged with the detail of the bill of complaint. By comparing critically all the allegations found in the several parts of the bill of complaint, and admitted by the demurrer, their factual substance was ascertained to be in accordance with the statement now to be made.

The late Rebecca L. King was the owner in fee simple of an improved lot of land on the north side of Fayette Street in the city of Baltimore. Upon her death, on January 23rd, 1928, the lot was devised to the Safe Deposit & Trust Company of Baltimore, a body corporate, and James Morfit Mullen, in trust for the uses in her will declared. The adjoining lot on the east that fronts on the north side of Fayette Street is owned by the Homewood Realty Corporation, a body corporate, and is subject to the liens of the Eutaw Savings Bank of Baltimore and of Annie J. Gith under mortgage deeds to them respectively. The northeast boundary line of the first-mentioned lot coincides with the southwest boundary of the second lot, and at the level of the ground is the division line of the two walls of the several improvements built upon these adjacent lots, from the street line in front to the parallel line of the alley at the back of the lots. The warehouse for business purposes on the trustees' lot is four stories in height on Fayette street, that, after a depth of a few feet, drop down to a height of but one story, while the building to the east maintains a uniform height of several stories, and its wall is close to the division line, except that, above the level of the first story of each building, this wall, for a part of its length, recedes several feet from the division line, so that this recession above the first story

permits the swinging of shutters in this recessed space without crossing the division line of the contiguous lot, but all the other shutters on this wall pass and repass the boundary line between the lots when opened and closed. Consequently, if the trustees or subsequent owners were to extend their present building to a uniform height of four or more stories, the light and air obtained through the windows in the plane of the outer wall would be shut out, and use of the shutters of these windows for fire protection or other purposes would be prevented, but there would not be any interference with the use of the shutters hung on the sides of the windows in the recessed section of the wall, although the light and air passing through these windows would be lessened.

In addition to these allegations, the bill of complaint affirmatively shows the devolution of both lots, without a common owner, since 1893; and that the improvements on the more eastern lot were destroyed by fire in 1904, and that the present buildings thereon were erected some time since that conflagration. The ownership of this lot is not averred before 1890, but that any easement of light and air or of shutters moving across the property line arose out of the union of title in a common owner of both lots prior to that year, and a subsequent severance accompanied by such grant, reservation, or physical conditions, so as to create an easement in one lot and a corresponding servitude upon the other, is negatived by averments to the effect that no such grant, express or implied, has ever been made, either to the present owners of the more eastern lot or to their predecessors in title, by the trustees or their predecessors in title to the next adjacent lot to the west.

The other material facts are that the trustees have been seised and possessed of the premises, according to its boundaries, continuously since the death of their testatrix; that the trustees in June, 1928, entered into an agreement with a named party to sell the lot so devised to them in trust for the price of $370,000, and received a deposit thereon of $10,000, subject to the condition that there was no right of light and air enjoyed by the owners of the defendants' lot that would

prevent the building of a wall to any desired height along the northeast boundary line of the trustees' lot; that the prospective vendee caused the title of the lot to be sold to be examined, and discovered (1) that the Homewood Realty Corporation claims as the owner of the contiguous lot and improvements an easement of light and air over the lot of the plaintiffs above where its building is one story in height, so that such easement shall not be obstructed by any walls or structures erected upon the plaintiffs' lot along the division line between it and defendants' lot above the present height of its building; and also discovered (2) that in the defendant's chain of title there were two deeds which alone in the successive grants of either lot contain any reference to the alleged easements. The first is dated May 31st, 1890, and, in its granting clause, whose general terms include all appurtenant easements, there is particularly set out, as embraced in the grant, "the right to light and air over the lot of ground to the west adjoining as heretofore existing and now enjoyed." The second is the next succeeding conveyance of the lot, on August 5th, 1912, wherein a similar recital is found in the granting clause.

The trustees assert that the pretensions of the defendants to these easements were unknown to them until they were advised by the prospective vendee that it would not take title under the agreement to buy, because it could not obtain an assurance of the title as free from these rights or servitudes; and thereby the trustees lost their sale. In addition to these averments of a specific loss of a sale, the bill of complaint further charges that the property held by the trustees lies in the heart of the business district of the city, and is of great value, which requires the utilization of the entire area by a building whose height should not be limited, except by economic and structural considerations, in order that the lot may fully and profitably be developed. Consequently, the plaintiffs affirm the cloud thus cast upon their title by the defendants, although without any valid basis either in law or in equity, has stopped one sale; and has prevented, and will continue to prevent, the plaintiffs from selling the lot at

its actual worth, from constructing adequate improvements, or from enjoying the complete use of the lot, unless, by reason of the inadequacy of the law, a court of equity shall intervene to declare and protect the property rights of the plaintiffs in the premises.

Accepting these facts as established, they are sufficient to prove that the plaintiffs, and their predecessors in title, are, and were, seised and possessed in enjoyment of the alleged servient lot; and that, the defendants having neither an easement of light and air, nor one of opening and closing shutters, over the plaintiffs' lot, by either an express or implied grant, the plaintiffs are in full undisturbed enjoyment in possession of their lot, except for the occasional and transitory movement, in the upper air, over the plaintiffs' boundary line, of some of defendants' shutters in the course of their opening and closing. Under the allegations of the bill of complaint the swinging of the shutters out and back across the boundary line was a technical trespass of a recurrent character. These repeated aerial trespasses, however, caused no substantial damage, but might, in course of time, become a right by implied grant or adverse user. *Richardson v. Pond,* 15 Gray (Mass.), 387; *Tiffany on Real Property* (2d Ed.), sec. 360, p. 1255, sec. 251. Again, access of light and air was, by reason of the relative situation and structure of the respective improvements on the several lots and the natural properties of light and air, actually enjoyed by the defendants, and this condition would continue so long as there was no obstruction produced by a change in the use of the plaintiffs' lot by its owners. This enjoyment, while such a situation subsisted, did not depend upon any affirmative action, nor did it involve any physical invasion of the plaintiffs' premises, by the defendants or their predecessors or successors in title. So, in the absence of an express grant, it was only by verbal acts of the defendants and those under whom they derive, that the plaintiffs could know that it was claimed that a servitude of light and air burdened their land for the benefit of the land of the defendants. It is admitted by the demurrers that, by express words of grant in

two duly recorded deeds in the chain of title of the defendants, the easement of light and air in question was attempted to be assigned; and that the defendants have asserted this easement to be appurtenant to their estate. These two successive deeds purported to convey in terms the easement in question as appurtenant to the dominant estate conveyed by the same deeds. The deeds are in form valid grants, and the easement, if it existed, as the grantors by these conveyances declare, passed with the dominant estate.

It thus appears that the defendants claim over the land of the plaintiffs two easements. The one concerns the shutters hung on the outer face of the defendants' wall and swung across the division line, and the second is the right to the enjoyment of light and air over the land of the defendants. By the allegations of the bill of complaint the first is an adverse use, and the second rests upon a purporting grant. These burdensome pretensions, if invalid, cast a cloud upon the title, unless the basis of their assertion is so patently infirm that their assertion against the land would not so impair the title of the alleged servient estate in the mind of a reasonably prudent man of ordinary intelligence and diligence as substantially to affect the owner in the marketable quality of his title. If some such criterion were not enforced, the equity docket would be crowded with causes to quiet groundless or unsubstantial apprehensions with reference to title. So, if there be no special circumstances, and the cloud have for its foundation a conveyance or other instrument which is either clearly invalid on its face or whose terms deny the pretension, and the complainant need not resort to extrinsic evidence to establish the defect, the reason for equitable relief does not exist, because it is plain to a reasonably prudent man of average intelligence and diligence that the title or claim asserted is unfounded. *Infra.* Again, it is said to be so established by the weight of decision as to constitute a general rule, that, where the instrument or proceeding is not void on its face and grants the title or right asserted, "but the party claiming under it, in order to enforce it, must necessarily offer evidence which will inevitably show

its invalidity and destroy its efficacy," equity will not intervene. This second rule is enforced in a number of jurisdictions and is thus stated and italicised by Mr. Pomeroy, who sharply condemns the doctrine as being based "upon mere verbal logic, rather than upon considerations of justice and expediency." *Pomeroy's Eq. Juris* (4th Ed.), secs. 1399, 2156, and notes.

The case at bar gives point to the objection of Pomeroy. The defendants did not disclaim their pretensions to an easement of light and of air that had determined the contract to sell made by the plaintiffs, but, insisting that they should be permitted to be undisturbed in their power to molest and injure the plaintiffs in their title by an unfounded claim, they demur, and assign as a ground that the two deeds in their chain of title, although valid in form, will ultimately appear by the extrinsic evidence which will be adduced to have been made by strangers to the title of the plaintiffs and, so, be ineffective to transfer, as the grant in terms imports, an easement to the predecessors in title of the defendants. See 18 *Harvard Law Review,* 527, 528.

The particular rule which Pomeroy denounced, while not the subject of a direct repudiation by this court, is not in harmony with our decisions, whose consideration will be deferred in order to state briefly that the basis of the equitable relief granted is the principle that, because of the inadequacy of a remedy at law, a deed or other instrument or proceedings constituting the cloud may not be used injuriously or vexatiously to embarrass or affect the title of a plaintiff in possession. *Pomeroy's Eq. Juris* (4th Ed.), sec. 1398; *Sharon v. Tucker,* 144 U. S. 533, 543, 12 S. Ct. 720, 36 L. Ed. 532; *Holland v. Challen,* 110 U. S. 15, 20, 3 S. Ct. 495, 28 L. Ed. 52.

The fact that the plaintiffs could establish that the purporting easements did not actually exist does not deprive chancery of its jurisdiction, since the actual invalidity of the right or title claimed is a basic element in the jurisdiction of chancery, whose relief could not be obtained if the title or right asserted were valid. The principle upon which

chancery acts in such cases is that the value of property in land lies in its marketable title and the right to its quiet possession, and that sometimes justice requires that the owner should not have its worth materially depreciated by the chilling effect, for an indefinite time, of an invalid, although not actively asserted, claim, which, if enforceable, would cause him a loss; and so, he is entitled to have the questions affecting his rights forthwith determined by having the claim immediately established and enforced or his estate made secure against its operation. In this way bills *quia timet* anticipate and guard against future and contingent injuries and assure the estate of the owner. *Bispham's Principles of Equity,* secs. 568, 575; *Story's Equity Juris* (14th Ed.), sec. 947; *Polk v. Rose,* 25 Md. 153, 160, 162; *Holland v. Baltimore,* 11 Md. 186, 197; *Textor v. Shipley,* 77 Md. 473, 475, 26 A. 1019, 28 A. 1060; *Polk v. Pendleton,* 31 Md. 118, 124; *Steuart v. Meyer,* 54 Md. 454, 467-468; *Carswell v. Swindell,* 102 Md. 636, 639, 62 A. 956; *Livingston v. Hall,* 73 Md. 386, 395, 21 A. 49.

In the application of this principle in Maryland, the artificial test of jurisdiction that is condemned by Pomeroy is not adopted, as is shown by decrees removing clouds on title of the owner in possession in cases where the deed or other instrument, which was the basis of the pretender's claim, and apparently valid, would inevitably be rendered invalid and its efficacy destroyed by the evidence which the claimant must necessarily offer in order to enforce it. As in *Polk v. Rose* (1866), 25 Md. 153, 89 Am. Dec. 773, where the deed was regular on its face but given by a collector of taxes as a result of a sale made in default of the payment of taxes due on the land sold and conveyed. In order to sustain the special power of the collector to sell and convey, the preliminary acts prescribed by law must exist; and, in the absence of a statute making the deed *prima facie* evidence of the regularity of the proceedings, the burden was upon the grantee to show a strict compliance with the statutory requirements by evidence extrinsic to the deed. It was impossible in the case cited for the grantee to establish that the tax officer

acted in conformity with the law, and therefore he did not attempt it, but the owner of the land affected did present the facts which showed an absence of the conditions precedent to a valid sale and deed. The court, under the prayer for general relief, struck down the deed of the collector in order to remove the cloud it cast on the title. Pages 159-162. Compare *Steuart v. Meyer* (1880), 54 Md. 454, 465-468, decided after Acts of 1874, ch. 483, sec. 51, which put the burden of proof upon the party resisting the tax sale. Code, art. 81, sec. 61. Again, in *Duval v. Wilmer*, 88 Md. 66, 41 A. 122, D and H purchased for their joint adventure seventeen lots, and entered into a written agreement whereby the title was to be taken in the name of D and the lots were to be sold for their common benefit as defined by the agreement. The title was so taken, and D entered and held possession of the lots, and, before any lot was sold, H executed an unacknowledged sealed document which assigned all his interest in the lots to D. Subsequently, H, who then had neither any legal nor equitable interest, executed a deed to W, purporting to assign his interest in the seventeen lots, and to convey another lot to D in which H never had any interest; and W then put this deed and the agreement of D and H with reference to the seventeen lots on record. The existence of this deed to W cast doubt on the validity of D's title, and he failed on that account to obtain a loan with the property as security. This court directed a decree declaring W's deed null and void in order to quiet D's title. So, in *Whiteford v. Yellott,* 104 Md. 191, 64 A. 936, a contract of sale of a farm by Y to W was placed upon record. W was put in part possession, but Y retained his occupancy of the major portion of the farm, and later, upon W's default in performance, W surrendered full possession to Y and never thereafter made any claim to the farm. Afterwards Y sold several parcels off the farm, and the purchasers refused to accept title because of the recorded contract of sale to W. It was held on demurrer to the bill of complaint, and later on the testimony offered, that chancery had jurisdiction to

relieve the title of this cloud. *Southern Real Estate Co. v. Strub,* 128 Md. 513, 97 A. 705.

Finally, the case of *Clark v. Creswell,* 112 Md. 339, 76 A. 579, 21 Ann. Cas. 338, is one in which a deed was executed and delivered to A for life and then over to her heirs. Before it was recorded the deed was returned to the grantor, who inserted the name of B as a grantee, so that the conveyance purported to be to A and B for life, and then over to their heirs, and as so unlawfully altered it was recorded. Under the rule in Shelley's Case, A took an estate in fee simple, and was in possession of the land when she discovered the alteration, and it was held that in chancery she was entitled to have the cloud removed by a restoration of the deed to its original state.

As an instrument executed by a complete stranger to the title in land does not transfer any right or interest in that land, and as, in most instances, the title is a matter of record, the true status of the adverse party would generally be disclosed by the record, so the deed or other instrument of the stranger purporting to convey or otherwise affect the particular title would, under ordinary circumstances, not constitute a cloud on the title. This rule is not of universal application. While the conveyance or other document or proceeding upon which a stranger to the title relies may not be sufficient, yet, in connection with alleged extrinsic facts, such instruments or proceedings may create a cloud on the title. 5 *R. C. L., Cloud on Title,* sec. 31, pp. 659, 660; *Pomeroy on Eq. Juris.* (4th Ed.), sec. 2156, p. 4845. See notes to *Ann. Cas.,* 1912C, 834.

Since the fundamental principle upon which equity grants relief is that the owner in possession of the particular estate or right is harassed or damnified by the assertion of some unfounded claim or interest in the property adverse to him, whose enforcement the claimant indefinitely delays, and for which or against which the law affords him no adequate remedy, it would seem that, in principle, no substantial difference exists whether the semblance of title be that of a stranger or one in apparent privity of estate, provided the pretension

in connection with the circumstances would create such doubt or suspicion in the mind of a prudent and reasonable man of average intelligence and diligence as to result in materially affecting the owner in the maintenance of his rights or the disposition of his property. *Supra*. The decisions of this tribunal are decisively to the point that, wherever these conditions obtain, chancery will go to the relief of the owner and remove the cloud cast by the deed of a stranger to the title. So, in *Stewart v. May* (1909), 111 Md. 162, 73 A. 460, it was held on demurrer to the bill of complaint that the inclusion, in a deed made in 1907 of a lot to S, of a private alley, to which the grantor was a stranger in title and which was within the lines of an adjoining lot owned by M, accompanied by assertion of ownership by S of the portion included, the placing of a mortgage lien thereon by S, and the probability of a loss of evidence as to the identity and location of boundaries and monuments, resulting from the tenants of both lots altering their respective improvements, and the delay in the active assertion of S's claim, is sufficient to give the court jurisdiction, since the recited circumstances "are calculated to cast a doubt on appellee's title and to embarrass him in maintaining his rights." See *Stewart v. May*, 119 Md. 10, 16, 85 A. 957, an appeal in same cause from decree on facts. See also *Logsdon v. Brailer Mining Co.*, 143 Md. 463, 481-482, 123 A. 113. Similarly, in *Rosenthal v. Donnelly*, 126 Md. 147, 94 A. 1030, a stranger to the title in D conveyed an adjoining lot to R by a deed which embraced a small part of the land owned by D, but not until R had obtained from his grantor an abatement of the purchase price by reason of such erroneous inclusion. Nevertheless R placed the deed on record and executed a mortgage deed on the premises as described in the grant to him. A contract of sale was lost to D because of this situation, and R's refusal to execute a quitclaim deed. The court held these facts were sufficient to give jurisdiction in equity to entertain a bill *quia timet*.

The actual possession of land of which the owner is seised in fee simple is not ousted by the mere user of an asserted

easement (a); and, by reason of this possession, the owner has no plain and adequate relief at law, because ejectment does not lie (b); and an action of trespass to try title is not available so far as the denied easements of air and light are concerned, since their enjoyment involves no breach of the owner's possession; and, while every swinging of shutters over the owner's land is a technical breaking and entering, that would be productive of a multiplicity of actions in which the damages recoverable would be nominal and, therefore, not efficacious to end the repetition of the wrong, which, if suffered to be sufficiently long continued, without interruption, might ripen into a title by adverse user (c). Moreover, a judgment recovered in trespass to try title would not clear the title of the cloud imposed by the wrongful claim of an easement of light and air. As an unfounded claim of an easement may cast a cloud upon the title of the servient estate, it is clear that complete and adequate relief therefrom is not obtainable at law. (a) 51 C. J. sec. 112, p. 191; Parker v. Wallis, 60 Md. 15, 18, 19, 45 Am. Rep. 703. (b) Rosenthal v. Donnelly, 126 Md. 147, 94 A. 1030; Textor v. Shipley, 77 Md. 473, 26 A. 1019, 28 A. 1060; McCoy v. Johnson, 70 Md. 490-492, 17 A. 387; Hecht v. Colquhoun, 57 Md. 563; Polk v. Rose, 25 Md. 153, 161-162, 89 Am. Dec. 773. (c) Oberheim v. Reeside, 116 Md. 265, 275, 276, 81 A. 590; Cityco Realty Co. v. Slaysman, 160 Md. 357, 153 A. 278; Townsend Grace & Co. v. Epstein, 93 Md. 537, 557, 49 A. 629.

It follows that the doctrine prevailing in this jurisdiction is that, where a person is seised and possessed of a legal estate or interest, and is unable to obtain an adequate legal relief against an invalid adverse title or right therein apparently arising under a deed, instrument or proceeding relating to real estate, so that such deed, instrument, or proceeding may injuriously or vexatiously affect or embarrass the owner's title, or render precarious or doubtful his ability to produce existing extrinsic proof when, in the future, the adverse claimant would seek to enforce the adverse title or right which is being held in abeyance, the owner's privilege to have

recourse to equity to have the cloud on his title or interest removed is unquestioned, unless the document is either void on its face, without the necessity to resort to extrinsic evidence, or by it terms does not apply to the title or interest it is claimed to affect, or the title or right of the claimant is derived from one who appears by the records to be a complete stranger to the title of the owner. *Supra;* and *Pomeroy's Eq. Juris.* (4th Ed.), sec 2153, p. 4839, sec. 1399, sec. 2156, p. 4845.

The application of the rules stated to the allegations of the bill of complaint at bar makes it clear that the demurrers were properly overruled. Against the fee simple title of the owners in possession, the owners of an adjoining lot assert the unfounded right to enjoy certain easements, which, if valid, would be a burden upon the alleged servient estate. These false claims have injuriously affected the title of the plaintiffs. The major easements claimed are in the continuous and uninterrupted flow of light and air over and across the premises of the plaintiffs. While it is unquestioned law in this jurisdiction, since the decision in *Cherry v. Stein,* 11 Md. 1, 22, 24, that the doctrine of ancient lights does not prevail in Maryland, and therefore an easement in light, and, also, in air, as both are governed by the same principles, over contiguous land, does not arise by prescription, yet such an easement may be created by an express grant or by a reservation in a deed of the servient land, or by means of an explicit covenant, or by an implied grant when, upon the severance of an entire parcel of land and a conveyance of one of the parts, an easement in the form of a right to enjoy light and air over the portion which the grantor retains may be impliedly brought into existence if it be shown that the easement contended for as the result of the severance is reasonably necessary to the enjoyment of the portion conveyed. *Knight v. Mitchell,* 154 Md. 102, 140 A. 74, 56 A. L. R. 1135; *Janes v. Jenkins,* 34 Md. 1, 6 Am. Rep. 300; *Cherry v. Stein,* 11 Md. 1.

The methods by which an easement may be created or arise are important because the averments of the bill of complaint

do not carry back the chain of title of plaintiffs' lot farther than 1893, but that of the defendants' is extended to 1890, without a common owner for the two lots. Whether or not there was an antecedent unity in the ownership of both lots is neither affirmed nor denied, so the more adverse status of the ownership is assumed against the pleader on demurrer. In the deed of 1890 to the defendants' predecessor in title, . the owner and possessor of defendants' lot, by a deed with covenants of special warranty and further assurance, conveyed it and an easement in the continuous and uninterrupted flow of light and air over the lot now owned by the plaintiffs "as heretofore existing and now enjoyed" to his grantee, his heirs and assigns, in fee simple. See *Cochran v. Pascault,* 54 Md. 1, 15; *Lowes v. Carter,* 124 Md. 678, 686, 93 A. 216. This deed is prior to the first deed given in plaintiffs' chain by over three years, and, since it was nearly forty years from the time it was delivered and recorded to the date the bill of complaint was filed, the deed was an ancient document. Because of its antiquity and nature, the deed is admissible as tending to show, subject to disproof, that its grantor was the owner and in possession of the lot and the easements, and transferred them to his then grantee as his conveyance imports.

The execution and delivery of this ancient deed of special warranty and covenant of further assurance was an act of ownership and evidence of possession, since it was the consummation of an ordinary transaction of purchase and sale, that is only intelligible upon the basis of the title in the subject-matter being in the vendor and by him transferred to the vendee, because, in the usual course of such affairs, men do not execute, nor accept, a grant, upon consideration, of an estate or right in land whose title will not pass as the deed imports. This assumption, and the formality and solemnity attending the execution, with the difficulty of producing witnesses to prove such remote transactions, are the reasons for the admission of ancient deeds for any relevant purpose. 2 *Am. & Eng. Ency. of Law* (2d Ed.), 331; *Davis v. Gaines,* 104 U. S. 386, 398, 26 L. Ed. 757; *Fulkerson v.*

*Holmes,* 117 U. S. 398, 6 S. Ct. 780, 29 L. Ed. 915; *Carver v. Jackson,* 4 Pet. 1, 7 L. Ed. 761; *Rollins v. Atlantic City,* 73 N. J. Law, 64, 62 A. 929; *Casey v. Inloes,* 1 Gill, 430, 491-493; *Carroll v. Norwood,* 1 Har. & J. 167, 175, 176; *Peterkin v. Inloes,* 4 Md. 175, 188; *Gantt v. Trott,* 107 Md. 325, 328, 68 A. 612; *Hoddy v. Harryman,* 3 Har. & McH. 581; *Thayer's Cases on Evidence* (2d Ed.), pp. 440-474, 315; *Thayer's Preliminary Treatise on Evidence,* pp. 520, 521; *Greenleaf on Evidence* (16th Ed.), vol. 1, pp. 720, 721; *Phipson on Evidence* (7th Ed.), 108; *Malcomson v. O'Dea,* 10 H. L. C. 593; *Attorney General v. Emerson* (1891), A. C. 658; *Bristow v. Cormican,* 3 App. Cas. 641, 653, 668; *Whitman v. Shaw,* 166 Mass. 451; *Washburn on Easements* (4th Ed.), 32. Compare *Wigmore on Evidence* (2d Ed.), sec. 157.

The hearsay rule does not apply to this dispositive document, whose delivery was accompanied by a seisin and possession of the property in the vendee and his privies in estate, who have ever since held a title, possession and enjoyment of the land, and a reception of air and light consistent with the ownership of the grantor and referable to the particular document mentioned. Fourteen years after this grant the improvements on the lot conveyed were destroyed by fire. Subsequently, although the time is not given, new buildings were erected, and in the wall along the division line windows, as has been described, were placed above the height of the first story, and some of the shutters were hung so as to swing over the adjoining lot, which afforded to all these windows a continuous and unobstructed flow of light and air. Thus the situation continued until 1912, when the grantees in the deed of 1890 conveyed the lot and its appurtenances, and "especially the right to light and air over the lot" of the plaintiffs, to grantees as tenants by the entireties, in fee simple. In 1926, the surviving tenant conveyed the property to the Homewood Realty Corporation, the present holder of the equity of redemption. It thus appears from the bill of complaint that, aside from the swinging of certain shutters over

the premises of the defendants, there has been no change in estate or easement.

The owners of the alleged dominant estate and their predecessors in title could have acquired the right by prescription or grant to open and close shutters over the lot of the plaintiffs, and, as this user has continued for years, although their number is not stated, the long, continuous and adverse enjoyment of this right gives it an apparent, if disputable, validity, which affects prejudicially the title of the plaintiffs, and enables them to proceed to have the cloud removed before their evidence is lost, destroyed, or made difficult by impairment of recollection or death of witnesses. 51 *C. J.*, sec. 73, p. 197. See *Sharon v. Tucker,* 144 U. S. 533, 553, 12 S. Ct. 720, 36 L. Ed. 532; *Campbell v. Shipley,* 41 Md. 81, 105.

The question of an easement in light and air stands on a different footing, because such an easement is not acquired by prescription, but lies in grant. *Supra.* The actual enjoyment of an easement in light and air is upon the premises of the dominant estate whose current owner generally makes no tangible or visible use of the servient estate in connection with this enjoyment, whose incident, therefore, is of a negative character, in that the owner of the servient estate is restrained from doing or permitting thereon what might otherwise be done, if there were no easement in air and light. So long as there would be no change in the servient premises, the enjoyment of the easement by the dominant estate would be unobstructed and complete, and conformable with the nature of the easement purporting to be granted by the deed of 1890. Under this grant and the constant enjoyment of the easement in conformity therewith, the defendants have a *prima facie* title to the accustomed reception of air and light, which, when brought to the attention of the purchaser of the servient lot by an abstract of title, caused the purchaser to rescind a contract because the plaintiffs could not convey a marketable title free of this easement. It is true that the bill alleges that the dominant estate does not possess nor enjoy this easement of right, but this position requires for its

vindication the production by the plaintiffs of extrinsic evidence. *Supra.* *Carter v. Woolfork,* 71 Md. 283, 288-290, 17 A. 1041.

. It may be said in conclusion that a property owner in possession and enjoyment under a grant *prima facie* valid is not a complete stranger in title to the adjoining land, which, according to his grant, is subject to a servitude of light and air for the benefit of his property, and over which he has apparently acquired another easement by adverse user. *Supra;* and see *Tiffany on Real Property* (2d Ed.), sec. 567, p. 2188.

Upon the authorities cited, the decree of the chancellor must be affirmed.

*Decree affirmed, and cause remanded, the appellants to pay the costs of this appeal.*